In the Matter of the ADOPTION OF FEMALE CHILD X.

No. 4411.

Supreme Court of Wyoming.

July 15, 1975.

Rehearing Denied Aug. 21, 1975.

Robert A. Gish, of Zaring & Gish, Basin, for appellants.

Before GUTHRIE, C. J., and McCLINTOCK and RAPER, JJ.

GUTHRIE, Chief Justice.

This is an appeal from a judgment dismissing the petition of the petitioners seeking the adoption of a female child. These petitioners are husband and wife, and the wife is the grandmother of this child, who is the offspring of her daughter, a respondent. At the time this child was born the mother was unmarried.

The respondents are the mother of this child and her husband, whom she married after the birth of the child. To avoid any possible embarrassment to the child involved, none of the parties will be referred to by name, but as petitioners or respondents; however, the names necessarily appear in the records of this court and of the district court.

There was no consent by the mother, who opposes this adoption. Petitioners seek this adoption, relying upon § 1–710.2, W.S.1957, 1975 Cum.Supp., and place their reliance upon the willful abandonment of the child and the asserted failure of the natural mother of the child and her husband to contribute to the support and maintenance of the child for more than one year immediately prior to the filing of the petition.

By way of answer to this petition, the child's mother and her husband assert that he is the lawful father by virtue of an adoption, deny that this child was left with

the petitioners at that time on a permanent basis, contend they did so only because they were having marital difficulties which have now been settled, and assert that the petitioners had not made any request for maintenance or support of this child. It is to be noted that the parties stipulate that the respondents had made no contribution for the maintenance or support of the child.

The record shows that the child was born February 14, 1967, and was thus approximately seven years of age at the time of this hearing. The petitioners paid both the doctor and hospital bills at the time of the birth and the child remained in the home of these petitioners from the time of her birth until sometime in 1969. The mother was married in that year and had the child in her care from that time until October of 1972 when she was left with the petitioners for what was understood to be a couple of weeks and remained in the home and with the petitioners until the entry of the judgment by the court. Shortly after she was left with the petitioners, they took her to Colorado and she has resided at various places where the husband had employment. There was apparently no communication between the mother and the child and petitioners thereafter until June 1973, when the mother came to petitioners' home to see the child but saw only the husband because the child was on a vacation with her grandmother. Later in that month the mother did come to see the child and visited with her in the petitioners' home and admittedly told the child at that time that she would never have to leave petitioners again. The child was not available in Greybull most of the summer and fall of 1973 because the husband had employment elsewhere and the child was taken with petitioners.

Petitioners concede they never asked for any support from the mother nor her husband nor did they expect it, and the respondents made no offer of support. Both petitioners agree, however, that there was never any expectation that they be paid and the child's grandmother styled it a "voluntary gratuity" on their part.

The relationship between the petitioners and the husband of the mother is apparently very bad and it is unpleasant when they meet. The mother testified without contradiction that it was an understanding when she left the child with petitioners that they should keep her until she could get herself settled. Although the record is not clear as to when this occurred, the grandmother at one time did ask the mother to relinquish her claim to the child so that petitioners might adopt her, but the mother refused.

There is a question in the record whether the respondent husband of the mother ever adopted the child. The trial court, believing there was a lack of evidence, dismissed him as a party, although there does appear a reissued birth certificate dated October 2, 1970, wherein the respondent husband of the mother appears as a parent. There is some reference in the testimony to another birth certificate, but this does not appear. The mother has had another child as a fruit of her marriage with her husband.

The trial court found there was no showing of abandonment. With this we find no fault and agree that petitioners failed in their burden to sustain that ground. All the proof submitted in this area demonstrates some parental inattention and neglect, which may in some manner be explained by the bad feeling between petitioners and the mother's husband and which did not contribute to the joy of any such reunion.

We have heretofore said that abandonment is more than temporary absence or neglect, In re Adoption of Strauser, 65 Wyo. 98, 196 P.2d 862, 868, and in the same case adopted the rule that evidence of such abandonment must be clear and convincing. The mother's refusal of the earlier request to give a written consent to the adoption by petitioners certainly belies an intention to abandon the child.

There must be, in order to constitute abandonment, an actual intent to terminate the parental ties and a purpose to relinquish parental claims, Peters v. Campbell, 80 Wyo. 492, 345 P.2d 234, 238.

Although there is no specific finding in the judgment with relation to the failure to support for a period of one year, the trial judge in his comments at the time of the disposal of the case remarked there was nothing in the record to show that either of these respondents have the ability to contribute to the support of the child and called attention to the statutory words "if able." Petitioners, seeking to establish an exception and facts which would justify the absence of parental consent, have the burden of this proof, In re Adoption of Biery, Mont., 522 P.2d 1377, 1380. There is no basis in the record herein for disturbing the finding of the trial court, even if the evidence was conflicting, S-Creek Ranch, Inc. v. Monier & Company, Wyo., 509 P.2d 777, 782, and citations therein.

There is another facet of this charge of the failure to support which deserves attention. Although it was mentioned in a context wherein a failure of support was considered an element of abandonment, this court in Strauser, supra, 196 P.2d at 869, set out a rule which has applicability here as follows:

"* * * It is of little or no importance if the persons in temporary care of the children are volunteers, who expect no assistance from the parent. * * *"

The fact is that petitioners were clearly volunteers and that no request or suggestion was ever made that respondents contribute to the support of this child. The testimony that they expected no such payment and that it was only a "voluntary gratuity" makes this statement completely applicable. To now claim advantage for what was never intended would be unfair. It would appear obvious that such a holding would be dangerous, and if we were to

hold otherwise a natural parent might be lulled into security and lose the right to a child under such circumstances without warning of the intention of those with whom the child was left.

Petitioners place their principal reliance for reversal upon the concluding portion of § 1–711, W.S.1957, 1975 Cum.Supp., which is as follows:

"In any case the court shall base its decision solely on what it believes to be for the best interests of the child and to the benefit and welfare of the child."

They then contend that the evidence shows conclusively that the best interest of the child would be served by such adoption. We express no opinion on this conclusion, but we will accept it as true for the purposes of this opinion.

Absent the consent of the parent there must be proof of certain conditions before an adoption may be granted. In this case, reliance being made upon the abandonment and failure to contribute to the support of the child for twelve months immediately prior to filing the petition, under § 1–710.2, W.S.1957, 1975 Cum.Supp., which petitioners have utterly failed to prove, we cannot reach the question of the child's best interest. Our decision on this phase of the case might well be rested solely in Strauser, supra, and the discussion therein, which would be unnecessarily repetitious if set out in full, except for the following short statement, 196 P.2d at 868:

"* * * In an adoption proceeding in which it is necessary for the petitioners to prove that a parent has abandoned the child, questions in regard to the fitness of the petitioners [citation] and the welfare of the child [citation] are not reached if abandonment is not proved. * * *"

This is a well-recognized rule, as evidenced by the cases cited in support thereof and 2 C.J.S. Adoption of Persons § 66, pp. 490–491.

However, because of the change in our statutes since the time of Strauser,

supra, and the earnestness with which this proposition is urged, we will consider it. There is one general all-pervasive rule which must be considered in determining such a contention, and that is the rule that when it is sought to secure an adoption against a nonconsenting parent the statutes will be strictly construed and every intendment made in favor of the nonconsenting parent's claims, In re Adoption of Narragon, Wyo., 530 P.2d 413, 414. It may be further observed that this court has often asserted that all statutes on a given subject should be read together and as constituting one law, Woolley v. State Highway Commission, Wyo., 387 P.2d 667, 673, and Kuntz v. Kinne, Wyo., 395 P.2d 286, 288; and particularly that the provisions should be construed in harmony and to avoid conflicting and confusing results, Stringer v. Board of County Commissioners of Big Horn County, Wyo., 347 P.2d 197, 200, and Woolley v. State Highway Commission, supra. If we were to adopt the contention of the petitioners herein, we would make inoperative and destroy part of the statute and allow it to swallow up entirely § 1–710.2. It would make the consent of the parent unnecessary and the right to an adoption rest solely upon the trial judge's discretion. To substitute this uncertain standard in place of a carefully drawn statute which provides the exceptional circumstances under which an adoption may be allowed without parental consent would be a far-reaching step in the direction of the "Big Brother Knows Best" philosophy, which this writer is unable to embrace even when clad in such a noble phrase if it be utilized as an instrument to separate natural parents from the custody of their children.

The judgment is therefore affirmed.