550 P.2d 481 (1976)
In the Matter of the ADOPTION OF George Robert VOSS, II, a minor child.
George R. VOSS, Appellant (Contestant below),
v.
Jack J. RALSTON, II, Appellee (Petitioner below).
No. 4542.
Supreme Court of Wyoming.
May 25, 1976.
*482 Ronald W. Hofer, Casper, signed the brief and appeared in oral argument on behalf of appellant.
Philip N. Nash, Juneau, Alaska, signed the brief and appeared in oral argument on behalf of appellee.
Before GUTHRIE, C.J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.
RAPER, Justice.
The trial court allowed adoption of the child of a non-consenting father. The crucial question in this appeal, presented by the father-appellant, involves the construction of § 1-710.2, W.S. 1957, 1975 Cum. Supp., Laws, 1963, Ch. 59, § 8:
"An adoption may be decreed without the written consent of the parent or parents of the child sought to be adopted where said non-consenting mother or father:
"(a) has been adjudged guilty by a court of competent jurisdiction of cruelty, abuse, or mistreatment of the child; or
"(b) has been judicially deprived of parental rights or had parental rights terminated with respect to the child; or
"(c) who has willfully abandoned such child;
"(d) if it is proven to the satisfaction of the court that said father or mother, if able, has not contributed to the support of said child during a period of one (1) year immediately prior to the filing of the petition for adoption, or
"(e) has caused the child to be maintained in a public or private children's institution or the Wyoming department of public welfare for a period of one year without contributing anything to the support of said child during said period."
*483 Precisely stated, must (c) and (d) be read and considered together since the conjunctive "or" does not appear following (c) as it does following each of the other conditions which must exist in the alternative before a parent loses his rights of parenthood?
The father-appellant and the present Catherine Lynn Ralston were married in 1968. George R. Voss, II, the child-subject of this appeal, was born to that union. The parents were divorced on March 23, 1970 and the child's custody awarded to the then Mrs. Voss with a child-support allowance of $125.00 per month, subsequently reduced by stipulation to $75.00 per month. About a month after the marriage dissolution, on April 25, 1970, the petitioner-appellee for adoption married the divorced Mrs. Voss and the child has lived with them ever since.
The petition only alleged and the trial judge only found that the father had not contributed to the support of the minor child during a period of one year immediately prior to the filing of the petition for adoption even though able to do so. There was no allegation nor finding that the father had abandoned his child.
The questioned section is obviously poorly written and ungrammatical. Section 1-710.2 is grammatically incorrect when subsection (c) is read with the opening phrase of the statute, thus:
"An adoption may be decreed without the written consent of the parent or parents of the child sought to be adopted where said non-consenting mother or father:
"(c) who [sic] has willfully abandoned such child."
Subsections (a), (b) and (e) can be read separately with the opening of the section. If the word "who" was left out, and it does serve no useful purpose, (c) would be able to stand alone.
Going through the same process with (d), we first come up with a seeming lack of connection:
"An adoption may be decreed without the written consent of the parent or parents of the child sought to be adopted where said non-consenting mother or father:
"(d) if it is proven to the satisfaction of the court that said father or mother, if able, has not contributed to the support of said child during a period of one (1) year immediately prior to the filing of the petition for adoption, or"
It would make sense if the words were rearranged as follows: place the words "has not contributed to the support of said child during a period of one (1) year immediately prior to the filing of the petition for adoption" at the beginning of the subsection, followed by "if it is proven to the satisfaction of the court that said father or mother, if able, or."
We then end up with the subsection (d) more related to the opening, reading:
"An adoption may be decreed without the written consent of the parent or parents of the child sought to be adopted where said non-consenting mother or father:
"(d) has not contributed to the support of said child during a period of one (1) year immediately prior to the filing of the petition of adoption, if it is proven to the satisfaction of the court that said father or mother, if able, or"
After doing this transposition for some careless draftsman, we now have:
"An adoption may be decreed without the written consent of the parent or parents of the child sought to be adopted where said non-consenting mother or father:
"(c) has willfully abandoned such child;
"(d) has not contributed to the support of said child during a period of one (1) year immediately prior to the filing of the petition for adoption, if it is proven to the satisfaction of the court that said father or mother, if able, or"
Even with repair of the legislation, the word "or" is missing between the two subsections, in order to clearly conform to the position taken by appellant that there must be abandonment and non-support for one year or to clearly fit the position taken by appellee *484 that each is a separate ground. An ambiguity exists so we must therefore resort to statutory construction. Where the language is unambiguous and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory construction. State v. Hungary, 1956, 75 Wyo. 423, 433, 296 P.2d 506, 509.
An attempt to locate the source of the questioned section finds us eventually in Montana where similar language is found, but with a different introductory phrase. After providing for the written consents of parents, § 61-205, Revised Codes of Montana 1947, 1975 Cum.Supp., states in pertinent part:
* * *
"provided, that consent shall not be required from a father or mother,
* * *
"(d) who has, in the state of Montana, or in any other state of the United States, willfully abandoned such child; or,
* * *
"(f) if it is proven to the satisfaction of the court that said father or mother, if able, has not contributed to the support of said child during a period of one (1) year before the filing of a petition for adoption; * * *."
The footnotes to § 61-201 of the Revised Codes of Montana 1947, 1975 Cum.Supp., indicate that the quoted § 61-205 came from the Uniform Adoption Act. The uniform act section of comparable import has an even different word format. Section 6 of the Uniform Adoption Act, 9 U.L.A. Master Edition, p. 18, is worded:
"(a) Consent to adoption is not required of:
"(1) a parent who has [deserted a child without affording means of identification, or who has] abandoned a child;
"(2) a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree;
* * *"
Through evolution, the Wyoming act bears only a faint resemblance to its ancestor.
We cannot say that there is the clerical error claimed by appellee in omission of "or" at the end of subsection (c). An "or" does not appear in § 8, Ch. 59, Session Laws of Wyoming, 1963, nor in House Enrolled Act No. 53, by which the section was enacted and which we have examined. The Digest of the House Journal covering the journey of H.B. 72, its origin, reveals nothing but minor matters in other particulars. An in camera personal view of the original H.B. 72 discloses that the word "or" was not in the bill when introduced. From all this, we can only conclude that there was no clerical error or inadvertent omission and it was passed by the legislature as it intended from the very beginning. We presume it was at least read by every member of the legislature and subjected to searching committee analysis. The procedure of enactment of a statute may be considered in its construction. Manning & Martin v. State Board of Equalization, 1943, 58 Wyo. 425, 431, 133 P.2d 373, 374. We may examine the legislative journals to determine whether or not the action in question is, in fact, the act passed by the legislature. State ex rel. City of Cheyenne v. Swan, 1897, 7 Wyo. 166, 51 P. 209, 40 L.R.A. 195, 75 Am.St.Rep. 889.
The subsections with which we are concerned have been in effect for a period over 12 years and the legislature has not by way of amendment seen fit to supply an "or" as a part of the subsection. In Bessey v. Board of Educational Lands and Funds, 1970, 185 Neb. 801, 178 N.W.2d 794, it was said that a court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes and this is particularly true where it appears, as here, that the matter was intentionally *485 omitted. Since those extrinsic aids eliminate error, we proceed on to rules of grammatical interpretation.
Webster defines "or" as a function word to indicate (1) an alternative between different or unlike things, states or actions; (2) choice between alternative things, states or courses. The word "or" is ordinarily used as a disjunctive generally corresponding to "either" as "either this or that." People v. Smith, 1955, 44 Cal.2d 77, 279 P.2d 33. Where two clauses or phrases are expressed in the disjunctive, they are coordinate and either is applicable to any situation to which its terms relate. Shields v. Shields, 1943, 115 Mont. 146, 139 P.2d 528. Generally, use of the disjunctive indicates alternatives and requires separate treatment of those alternatives, hence a clause following a disjunction is considered inapplicable to the subject matter of the preceding clause. Quindlen v. Prudential Insurance Company of America, 5 Cir.1973, 482 F.2d 876, 878.
Where the legislature has specifically used a word or term in certain places within a statute and excluded it in another place, the court should not read that term into the section from which it was excluded. Dunlop v. First National Bank of Arizona, 1975, U.S.D.C.Ariz., 399 F. Supp. 855, 856. A word or words appearing in one section of a statute cannot be transferred into another section. United States v. Wiltberger, 1820, 5 Wheat. 76, 97, 18 U.S. 76, 97, 5 L.Ed. 37. Since the word "or" is absent we must now conclude that (c) and (d) are not separate and not alternatives. The series of alternatives was interrupted by its absence and so joinder of (c) and (d) must have been intended.
There are other rules of construction which eventually force us into a corner from which we have little hope of escape. The omission of words from a statute must be considered intentional on the part of the legislature. State v. Reese, 1974, 12 Wash. App. 407, 529 P.2d 1119. Words may not be supplied in a statute where the statute is intelligible without the addition of the alleged omission. Ward v. Yoder, Wyo. 1960, 355 P.2d 371, 376, reh. den., 357 P.2d 180; Montoya v. McManus, 1961, 68 N.M. 381, 362 P.2d 771. Words may not be inserted in a statutory provision under the guise of interpretation. Kirkwood v. Bank of America Nat. Trust & Savings Ass'n, 1954, 43 Cal.2d 333, 273 P.2d 532. The Supreme Court will not read into laws what is not there. Durante v. Consumers Filling Station Company of Cheyenne, 1953, 71 Wyo. 271, 299, 257 P.2d 347, 356; Cook v. Hill, 1960, 224 Or. 565, 356 P.2d 1067. This court will not supply omissions in a statute and redress is with the legislature. Lo Sasso v. Braun, Wyo. 1963, 386 P.2d 630, 631-632. We are alerted by all this to the result that it is just as important to recognize what a statute does not say as it is to recognize what it does say.
If there is any remaining tittle of doubt, it is cleansed away by the approach we take that adoption statutes are strictly construed when the proceeding is against a non-consenting parent and every reasonable intendment is made in favor of that parent's claims. In re Adoption of Female Child X, Wyo. 1975, 537 P.2d 719, 723; In re Adoption of Narragon, Wyo. 1975, 530 P.2d 413, 414.
There is a reason for that tenet. Paraphrasing what was so understandingly said in In re Bryant's Adoption, 1963, 134 Ind. App. 480, 189 N.E.2d 593, the earliest and most hallowed of the ties that bind humanity, in all countries considered sacred, is the relationship of parent and child. Therefore, parents have the first and natural right to their children. A decree of adoption tears asunder forever the parent-child relationship and for all legal and practical purposes, that child is the same as dead to the parent affected. The parent has lost the right to ever again see the child or even know of his whereabouts. Courts cautiously guard the parent-child relationship.
Divorce creates an unnatural relationship between parents and children, *486 complicated by remarriage of parents to others. The child cannot in such circumstances live with both parents. The court in divorce actions does not ordinarily determine unfitness of one or the other parent but only determines custody. There is no showing of any sort that the father here is an unfit parent in the whole sense. It is true that he has neglected an important segment of parenthood  support  but that is only a part of his obligation. He still has an important biological connection to his child which he has shown an inclination to retain through a continuing interest in visitation; perhaps we cannot ignore that he has the interest he here shows to keep that connection with the youngster he has sired. He is trying to rescue his visitation rights, an intermittent companionship and to have his son bear his name. We cannot slight and we should encourage the natural, normal and warm relationship that should exist between parent and child. The parent-child relation is a right "far more precious * * * than property rights * * *." May v. Anderson, 1953, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221, 1226. A father is entitled to take some part in the guidance of his child, in imparting his philosophies, teaching, though informal, those humanities gathered in his own existence. Much of this is conveyed subconsciously but nevertheless exists. It is a right of a father to do that by association. The atmosphere, of course, lacks that of a complete family relationship but is the best available against the backdrop of divorce. The same occurs but more radically with the death of a parent; the child loses the complete contribution of a father or a mother in that case. A child is entitled to claim and have a relationship with his real parent and not a substitute, if at all possible. By adoption, the child usually loses a part of his heritage, the contact with his grandparents, aunts, uncles, cousins; there is comfort in life to have family to turn to and claim. A parent should be permitted to give that to his or her child.
We do not discount or belittle the role of a step or adoptive parent. We only say that the natural parent must not be excluded, if his or her role can be consistently continued. There is a splendor in adoption in appropriate cases. It affords in so many instances a future in every respect which a child may not otherwise enjoy. It, as well, fills a void for the childless and others with the capability and desire to care for those helpless, lost and abandoned. It is the duty of the legislature and the courts to bring these considerations into an attitude of equilibrium.
Those facts of life may have been in the minds of the legislators when the statutory section was framed as it was. It would have been reasonable, if so. The legislature is presumed also to be aware of the great deference this court has shown to natural parents. All statutes are presumed to be enacted by the legislature with full knowledge of the existing state of law with reference thereto and statutes are therefore to be construed in harmony with the existing law, and as a part of an overall and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to the decisions of the courts. Civic Association of Wyoming v. Railway Motor Fuels, 1941, 57 Wyo. 213, 238, 116 P.2d 236, 245.
The requirement of abandonment by a parent has formed a significant role in the adoption law of Wyoming. This court interpreted the statutory scheme (§ 58-201, et seq., W.C.S. 1945), existing before enactment of the section we construe, that "the `parents' who must consent to the adoption are the parents who have not by abandonment lost the right to the care, custody and control of the children." In re Adoption of Strauser (Lucas v. Strauser), 1948, 65 Wyo. 98, 113, 196 P.2d 862, 867. In Strauser it was said that abandonment imports conduct by the parent "`* * * which evinces a settled purpose *487 to forego all parental duties and relinquish all parental claims to the child.'" It involves more than temporary absence or neglect of parental duty. There must be evidence that at some time, parental interests, duties and obligations have been definitely dropped. Strauser recognizes that in some circumstances failure to furnish money is quite important; § 710.2(c) and (d) retains that point of view. It was said in Peters v. Campbell, 1959, 80 Wyo. 492, 345 P.2d 234, that in order to have abandonment of a minor child by a father, there must be an actual intent manifested to sever parental relations. We conceive that the legislature with good reason wished to preserve the abandonment concept as additional to the mere failure to support; they are not synonymous.
An interesting definition of parental abandonment is found in In re Adoption of Walton, 1953, 123 Utah 380, 259 P.2d 881, where it was said, quoting from an older Utah case, that abandonment ordinarily means by equivalency, "`* * * that the parent has placed the child on some doorstep or left it in some convenient place in the hope that some one will find it and take charge of it, or has abandoned it entirely to chance or fate.'"
Since the most important issue in this case is the construction of § 1-710.2, W.S. 1957, 1975 Cum.Supp., and there is a complete absence of any evidence of abandonment, which we consider necessary, our decision in that regard is dispositive of the appeal. There is no need for us to reach and consider the question of proof of ability on the part of the father to contribute to the support of his child. Without deciding, we question that the petitioner met his heavy burden of showing an ability to pay on the part of the father when every intendment is made in favor of the non-consenting parent's claims. In re Adoption of Female Child X, supra.
We hold that one seeking the adoption of another's child without his consent must, under the circumstances of this case, allege and prove not only his non-support, if able, for the prescribed period but also willful abandonment. No abandonment appears in the record of this case.
Reversed.
GUTHRIE, Chief Justice, with whom McCLINTOCK, Justice, joins (concurring in part and dissenting in part).
I would concur in the reversal of this judgment upon a very different basis than the majority. I specifically do not agree that the most important or crucial issue in this case is the construction of § 1-710.2, W.S. 1957, 1975 Cum.Supp.
In order that the basis of my concurrence and dissent is clear, it will be necessary to recite some facts as to the posture of this appeal, and particularly my disagreement with the statement in the majority opinion as to the crucial question therein involved.
Appellant asserts three propositions upon which he bases his claim for reversal. It is to be noted that the sole basis of the petitioner in seeking to adopt this child was the failure of the natural father to contribute to the support of said minor child during a period of more than one year immediately prior to the filing of his petition, even though able to do so. The petition contains no assertion of abandonment as a ground, nor does an examination of the record convince the writer that either party considered the question of abandonment in connection with this adoption. It is therefore the writer's view that the majority has departed from the issues herein in arriving at its conclusion. This record reveals no proof of the ability to make any contribution during the 12 months preceding the date of the adoption. This is definitely the burden of the appellee, and absent such proof reversal would be required, In re Adoption of Female Child X, Wyo., *488 537 P.2d 719, 722. See additionally, In re Adoption of Biery, 164 Mont. 353, 522 P.2d 1377, adopted, approved and followed in Adoption of Female Child X, where the factual situation would make the case directly in point. Thus, a short, direct per curiam disposal of this case is proper.
Although the majority fastens upon the question of whether these sections should be read conjunctively or disjunctively, the writer challenges the propriety of this disposal of so important a question because it is presented with little or no direct authority or argument in either brief.
It is a deep conviction of this writer that no appellate court should make disposal of such an important question unnecessarily unless and until it is vigorously presented by brief and argument, and that is not present in this case.
Appellant suggests, in his brief by way of conclusions, that first there must be proof of non-support for one year and that if this is shown there is the additional burden that the nonconsenting parent was unable to provide such support. He summarizes this contention with the statement:
"* * * In short, he must prove that the lack of support was a willful act, done with the knowledge that the result of this failure would be a relinquishment of every parental right and that the acts were done in disregard of such consequences. Appellees have not sustained the burden of proof required to show the required strict statutory compliance necessary to adopt Mr. Voss's son without Appellant's consent."
This clearly presents the proper basis for the disposal hereof as suggested by this writer and that there is no necessity for this court to provide a "shotgun marriage" of these two sections. The writer suggests that the philosophy of Justice McClintock, which he expressed in his concurrence in Stuebgen v. State, Wyo., 548 P.2d 870, decided April 12, 1976, and reiterated by him in Board of Trustees, Laramie County School District No. 1 v. Spiegel, Wyo., 549 P.2d 1161, decided April 22, 1976, is fully applicable, and I join in the rationale thereof.
It is my view that there is no ambiguity in this statute, and that the majority opinion conjures an ambiguity which exists only in the eyes of those beholders, and as a vehicle to engage in an improper construction thereof for some reason which evades this writer. I shall hereafter discuss as briefly as possible my reasons for this view, with only illustrative authorities cited, because as a dissent this will have no precedential value.
In support of my view that there is no existing ambiguity justifying this result, I shall not set out the statute because it appears in the majority opinion. It is to be noted that the Act separated, by lettered subheads (c) and (d), that which the majority opinion insists on reading together, not only as one paragraph but as one sentence. This would also necessitate the studied ignoring of the fact that semicolons were employed to demonstrate their separateness. It is my view that when proper notice is taken of these facts no real ambiguity exists, and therefore it is improper to engage further in legal ruminations in the name of construction. This is not a personal or a new view. In the case of Hoffmeister v. McIntosh, Wyo., 361 P.2d 678, 679, rehearing denied, 364 P.2d 823, it was mentioned that the context, position of the sections, and the insertion of subheads, are unmistakable indicia of the intention of the legislature. The majority has seen fit to ignore this, although it seems of particular application in this case. The Supreme Court of the United has recognized a parallel philosophy, which I also believe applicable, when it said:
"* * * This Court naturally does not review congressional enactments as a panel of grammarians; but neither do we regard ordinary principles of English prose as irrelevant to a construction of those enactments. * * *" Flora v. United States, 362 U.S. 145, 150, 80 S.Ct. *489 630, 633, 4 L.Ed.2d 623, rehearing denied 362 U.S. 972, 80 S.Ct. 953, 4 L.Ed.2d 902.
The effect or purpose of semicolons,[1] completely ignored in the majority opinion, has been discussed by other courts. I find the following to be directly helpful:
"Accordingly, the semicolons between these various brackets do not have the effect suggested. They separate distinct sentences." (Emphasis supplied.) Mills v. State Board of Equalization, 97 Mont. 13, 33 P.2d 563, 570.
"* * * The clauses of the instant section are each as independent as the clauses of the example given, because of the fact that, although the predicate is expressed only once for the sake of brevity, it is eliptical to each of the sections set off by semicolons.
"Again, Ward's `Sentence and Theme' (Scott, Foresman & Co., 1923), at page 331, says the semicolon `shows that two sentences, each of which should stand alone, have been combined into one sentence'; and continues, `A semicolon is used to show that what follows is grammatically independent, though closely related in thought.'" (Italics in original.) McLeod v. Nagle, 9 Cir., 48 F.2d 189, 190.
It is on the basis of the preceding authorities that I am of the view that the ambiguity is court-created rather than legislative. In order to create an ambiguity in this case one must look not for meaning but for confusion, and because these sections of the statute with proper reading are not ambiguous, there is no occasion, nor is it proper, to resort to the rules of construction, Zanetti Riverton Bus Lines, Inc. v. State Board of Equalization, Wyo., 485 P.2d 387, 390; State v. Stern, Wyo., 526 P.2d 344, 346, and generally cases gathered under. Statutes, Wyoming Digest.
Although it is with some embarrassment, it appears necessary for me to suggest that the majority apparently relies upon a peg of inapplicable authority to arrive at the result that because the word "or" appears after subparagraphs (a), (b), and (d), there is some rule which denies to the court the right to read into this section the suggested word. The case of Dunlop v. First National Bank of Arizona, D.C. Ariz., 399 F. Supp. 855, does not appear applicable or helpful in this case, so the writer will at least summarily suggest the factual distinctions upon which this view is based. It is the writer's view that this case does not seek to enunciate the general rule extracted from it but was made upon the basis of the facts in that case and was applied because of the court's determination of the legislative intent. In Dunlop there was a contention asserted that because Subchapter I and Subchapter III of the Consumer's Credit Protection Act included, by specific reference, financial institutions, Subchapter II of that Act must be found to have included these words, although not mentioned. It is to be noted that this involved the insertion of two words in the body of that statute and did not involve a disjunctive or conjunctive situation. A footnote also mentions that because of the complexity of the regulations, if banks were intended to be included thereunder the congressional committee would at least have given them some mention. It is also my view that the court by its remarks carefully directed this statement at that particular set of facts. The writer shall not unduly lengthen this opinion but suggests that the case of United States v. Wiltberger, 5 Wheat. 76, 18 U.S. 76, 5 L.Ed. 37, is also questionable authority for this general rule, and is readily distinguishable.
The authorities cited which eschew the supplying of words, or which suggest words may not be inserted or read into *490 laws, might be considered by this writer as authority for his view because there can be no escape from the fact that the majority, in its opinion, inserts the word "and" between these two sections and effectively holds that although the exceptions were separated in the enactment the legislature in fact meant not to create a separate exception but to make the provisions of this separately numbered subhead an element of abandonment.
Although still adhering firmly to the view that from a reading of these sections with proper reference to the arrangement, grammar and punctuation no ambiguity exists, and that the ambiguity exists in these sections only to a reader looking for confusion rather than meaning, it is my view that the rule of Hoffmeister and the insertion of the semicolon are sufficient indicia of the legislative intent upon which to base a result contrary to that of the majority.
In addition to the fact that I assert there is no ambiguity justifying this result, I am clearly disturbed by the fact the majority makes no attempt to consider the intention of the legislature, which this court has claimed as a lodestar. It is inconceivable to the writer that the State legislature can be charged with the intention of making adoption an impossible and an intolerable situation, which could arise under this construction of the statute. Assume there would be a father with an inability to pay because of some physical or mental handicap, who left home before the child's birth, moved to a distant city, had no knowledge of, or made no inquiry of the child until being advised of an adoption attempt, being chronically unable to earn sufficient funds for support. Did the legislature intend to place in his hands the power to say "nay" by his refusal to consent? This I do not believe was the intention, nor can I attribute such intention to the legislature. If I may speculate, it would appear that this body was trying to encourage and implement adoption in proper cases, and I cannot join in the view of the majority, which is so critical of the writing and grammar in this section approved by the legislature.
NOTES
[1] See Lavery, Punctuation in the Law, 9 A.B.A.J. 225, 228 (1923), wherein it is said:

"Where punctuation is necessary there is ordinarily little difficulty with the period, the colon and the semicolon; the rules governing these points being fairly scientific and pretty well understood."