713 P.2d 1191 (1986)
In the Matter of the ADOPTION OF BGD, a Minor.
TD, By and Through her next friend and parents JD and ZD, Appellants (Plaintiffs),
v.
LDP and MFP, Appellees (Defendants).
No. C-85-1.
Supreme Court of Wyoming.
February 14, 1986.
Rehearing Granted March 28, 1986.
Dennis C. Meier and George A. Clarke, Lusk, for appellants.
Donald B. Hansen of Jones, Dumbrill & Hansen, Newcastle, for appellees.
Before THOMAS, C.J., and ROONEY,[*] BROWN and CARDINE, JJ., and RAPER, J., Retired.
ROONEY, Justice.
Appellant TD, by and through her parents, JD and ZD, brought suit against appellees LDP and MFP to recover custody of her infant daughter. This appeal is from a judgment in favor of appellees.
We reverse.
In mid-January of 1983, appellant and her mother met with their family medical doctor, Lanny Reimer, at his office in Newcastle, Wyoming. Appellant was fifteen years old, unmarried, and pregnant. She returned to Dr. Reimer's office for prenatal care on four other occasions, and each time he discussed with her the possibility of placing the child up for adoption.
Throughout this period, appellee MFP was employed by Dr. Reimer as his office manager. She and her husband, appellee LDP, had been hoping for some time to adopt a child and had expressed that desire to Dr. Reimer. Sometime in January, after seeing appellant, Dr. Reimer informed appellees that a child might soon be available for adoption.
On March 15, 1983, one week before her daughter was born, appellant went to Dr. Reimer's office for her last prenatal visit. Dr. Reimer suggested then that appellant discuss the legal aspects of adoption with attorney Gordon Schukei, with whom he *1192 had already scheduled an appointment for appellant. Appellees had previously retained Mr. Schukei to represent them in their efforts to adopt a child.
On the advice of Dr. Reimer, appellant and her mother met with Mr. Schukei that afternoon. Believing that appellant had already made up her mind to place her child up for adoption, and that, therefore, the sole purpose of her visit was to sign a consent form, Mr. Schukei presented her with the prepared document and advised her that it would be necessary for her to sign it. Appellant did so.
One week later, on March 22, 1983, appellant gave birth to a daughter. Approximately seven hours after delivery, and on the date of the birth, Dr. Reimer took the child from the hospital to his home where he gave her to appellees. Appellant testified that she told Dr. Reimer at the time of delivery that she did not want the adoption. Dr. Reimer testified in response to a question as to whether or not the mother said at the time that she wanted to keep the baby:
"I do not recall that exact statement. I certainly do know that she was ambivalent about this, and, you know, a part of her did not want to do this, and she may have said that to me and I do not recall that exact statement."
It is not disputed that by the following morning appellant told both Dr. Reimer and Mr. Schukei that she wanted to keep the child. Mr. Schukei informed her that she was too late and that her consent was irrevocable. That same day, March 23, 1983, Mr. Schukei filed a Petition for Adoption on behalf of appellees, and, on March 24, 1983, an Interlocutory Decree of Adoption was entered providing that subject to the entry of a final decree, appellant's daughter was to have the status of the adopted child of appellees.
On behalf of appellant, JD and ZD immediately consulted an attorney of their own. In a letter dated March 29, 1983, a week after the child was born, they informed Mr. Schukei that appellant was determined to keep her daughter. On April 29, 1983, appellant filed a petition requesting the court to set aside the consent and to order appellees to return the child. Trial was held on June 28, 1984, but it was not until March 1, 1985, eight months later, that the trial court entered judgment for appellees. While noting that it had some concern about the original propriety of the signed consent, the trial court concluded as a matter of law that appellant had not rescinded her consent in a timely fashion.
Appellant contends (1) that the trial court erred in finding the revocation of consent was not timely; (2) that the consent was given under duress; and (3) that it was given without full understanding of its import and without intent that it be irrevocable. We need not address these contentions inasmuch as the record reflects a failure to relinquish the child by the mother and putative father as required by statute to effectuate an adoption.
Section 1-22-104(c), W.S. 1977, provides in part:
"(c) The following documents shall be filed with every petition to adopt a child:
"(i) The appropriate consent to adoption pursuant to W.S. 1-22-109;
"(ii) Any relinquishments necessary to show the court that the person or agency legally authorized to have custody and control of the child prior to the adoption, has duly relinquished the child to the petitioners for adoption; * * *"
Section 1-22-109(a), W.S. 1977, provides in pertinent part:
"(a) A written relinquishment of the child and written consent to adoption shall be filed with the petition to adopt and shall be signed by:
* * * * * *
"(iii) The mother and putative father of the child if the name of the putative father is known; * * *" (Emphasis added.)
A relinquishment of the child was not filed with the petition, and the record does not reflect that there was a relinquishment. The consent recites that by "giving such consent that I am relinquishing all of my *1193 rights of whatsoever nature in and to said child," but that is not the relinquishment of the child itself as required by statute. The child had not been born at the time of the consent.
A consent to adoption executed before birth is not valid under some statutes. Section 7 of the Uniform Adoption Act, 9 U.L.A. 17 (1979), provides that the required consent to adoption "shall be executed at any time after the birth of the child." (Emphasis added.) It also provides in § 2 that, "[a]ny individual may be adopted," and the Commissioners' Note reflects the purpose of the section is to provide adoption of both minors and adults. The question of whether or not an "individual" exists during the period of gestation is thus avoided.
Section 1-22-109(c), W.S. 1977, provides that the consent "may be signed at any time." Although a "relinquishment" is regularly executed to transfer control to an adoption or foster agency, the requirement for such in our statutes serves to accomplish the purpose of statutes in other jurisdictions which require consent to be valid only if given after the birth of the child. The purpose is to prevent a natural parent, under the stress of unfortunate and unhappy circumstances, from giving consent to adoption without counsel and careful deliberation. Experience has evidenced a host of cases in which a mother plans to give her unborn child to adoptive parents, only to change her mind after going through child-birth and the resulting mother-child attachment.
In this case, a written relinquishment was not only lacking, but a physical relinquishment was not made. Shortly after the birth, Dr. Reimer took the baby, without the mother's knowledge, to his office manager, appellee MFP.
The mother did not physically relinquish the child, and she did not relinquish the child in writing after her birth, as contemplated by the statute.
In holding that appellant was denied the opportunity to relinquish her child as required by § 1-22-109, and that, therefore, the adoption was invalid, we are fully cognizant that the child has been in the custody of appellees for nearly three years. The policy of this Court, in adoption cases, is to look at what is best for the child under all circumstances. The three-year association with appellees is a strong factor for consideration under this policy. However, the predilection to sustain the natural family and the egregious nature of the circumstances of this case are factors which reflect the adherence to the policy in this case.
We reverse and remand for entry of judgment in favor of appellant.
THOMAS, Chief Justice, dissenting.
I must dissent from the disposition of this case by the majority of the court. I would affirm the judgment of the trial court. The result in this case will be perceived as a tragedy by the adoptive parents. Affirmance would be perceived as a tragedy by the natural mother and her parents. My primary objection to the result is that we compound the tragedy by adjusting the relationship of this young girl to the adoptive parents who literally are the only parents she ever has known. I perceive this as nothing more than a figurative application of the decision of King Solomon found in the third chapter of the First Book of Kings. I cannot avoid a clear perception that psychologically this court is cutting this baby girl in half.
In my judgment the statutory scheme can as easily be construed to justify an affirmance as a reversal. I find nothing in the provisions of § 1-22-109, W.S. 1977, to the effect that "[a] written relinquishment of the child and written consent to the adoption" does not contemplate a single response. The title on this statute is "Consent to Adoption," and two other statutory provisions then refer to "the consent" required by § 1-22-109. Sections 1-22-104(c)(i) and 1-22-107(a), W.S. 1977.
I would apply the concept that we should look to the statutory scheme as an integrated plan, and I then would give primacy to *1194 the basic principle permeating the law of adoption: the best interests of the child. Section 1-22-111(a)(b), W.S. 1977. Morris v. Jackson, 66 Wyo. 369, 212 P.2d 78 (1949); In re Adoption of Strauser, 65 Wyo. 98, 196 P.2d 862 (1948).
It is only in § 1-22-109(d), W.S. 1977, that the disjunctive is used with respect to the words "consent" and "relinquishment." Other references either suggest or are susceptible to the construction that the written consent of the natural parent may include the relinquishment. An examination of the adjustments in the adoption statutes in this state reveals that we started with a requirement that the petition for adoption be accompanied by written consent of the parents of the child. S.L. of Wyoming 1929, ch. 121. That posture remained until 1963 when the word "relinquish" first appeared in the statute. S.L. of Wyoming 1963, ch. 59 § 6. It was not until 1977, however, that any requirement for a relinquishment was added to the statute. S.L. of Wyoming 1977, ch. 187 § 1 (now § 1-22-104(c)(ii), W.S. 1977). That was a requirement for "a written relinquishment of the child and written consent to adoption." The 1977 amendment, S.L. of Wyoming 1977, ch. 187, § 1, amends § 1-22-104(c)(i) and (ii) to the end that the consent required by § 1-22-109 is treated as distinguishable from the relinquishment described in § 1-22-104(c)(ii), while at the same time § 1-22-109(d), W.S. 1977, was amended and now addresses "relinquishment" and "consent" once in the conjunctive mode and once in the disjunctive. In the same statute, however, they are lumped together in this context, "A written relinquishment and written consent to adoption," § 1-22-109(a), W.S. 1977, and the statutes do treat with them as being in effect one, i.e. consent. §§ 1-22-104(c)(i) and 1-22-107(a), W.S. 1977. Other interesting nuances in the development of this statute demonstrate that in 1977 it was changed to provide that consent and relinquishment are irrevocable unless obtained by fraud or duress. S.L. of Wyoming 1977, ch. 187 § 1. At the same time language from 1963 was changed to read, "the consent or relinquishment by a parent who is a minor is valid and may not be revoked solely because of minority." S.L. of Wyoming 1977, ch. 187 § 1.
None of these adjustments in the statute manifest any legislative intention that two separate acquiescences, relinquishment and consent, are required from a natural parent. I add to this proposition the statute which provides that consent may be waived. § 1-22-107(a), W.S. 1977, as amended (Special S.L. Laws of Wyoming, 1983, ch. 16, § 1). That statute specifically provides that a default judgment may be entered against a parent who has not consented to the adoption but who has been served with notice of the hearing. See Adoption with Parental Consent, To Better the Children's Welfare, 7 Wyo.L.J. 41, 43 (1952); Note, Administrative Problems Relating to Adoption, 8 Wyo.L.J. 210 (1954). I cannot perceive, however, how it would be possible for a default judgment to be entered against one who has not consented if a separate relinquishment also is mandated by the statute. As I read the statutes "consent" may be given at any time (§ 1-22-109(c), W.S. 1977), and I am satisfied that the statute does not require any separate, post-birth "written" relinquishment of the child. In my judgment this is an appropriate case in which to invoke the concept recognized in Smith v. City of Casper, Wyo., 419 P.2d 704 (1966) that the word "or" and the word "and" may be interchanged when it is necessary to harmonize the provisions of a statute, give effect to all its provisions, and effectuate the obvious intent of the legislature. I would not, therefore, give unwarranted emphasis to the only two "ors" appearing in the statutes.
I turn then to what I believe to be the paramount consideration in this instance, and that is that the case should be resolved by emphasizing and giving effect to the best interests of the child. § 1-22-111(a)(b), W.S. 1977. Morris v. Jackson, supra; In re Adoption of Strauser, supra. In the first of these cited cases this court recognized that even though the adoption is *1195 not proper because a consent was not obtained, the best interests of the child may nonetheless dictate that the adoption stand. In this case the little girl has been with the adoptive parents from the day after her birth until now. She was born on March 15, 1983. I do not think it is arguable that bonding between the child and the adoptive parents already has occurred. I cannot perceive how it would serve the best interests of this little girl to be separated at this time from the only parents she ever has known.
In In re Adoption of MM, Wyo., 652 P.2d 974 (1982) this court recognized that while the relationship of the natural parent to the child is to be honored, still the adoptive parents must not be deprived of their rights, and we held that irrevocable consent is the device which the legislature has chosen to secure commitment to the adoption. The majority abolishes this concept in its conclusion that the statute requires a written and physical relinquishment of the child after it is born. In In Matter of Adoption of Voss, Wyo., 550 P.2d 481 (1976) this court pointed out that it is important to recognize what is not included in a statute as well as what is. Our statutes do not provide that a post-birth written relinquishment must be included with the petition for adoption. The statutory scheme requires only that a written consent to adoption and written relinquishment of the child be furnished. There is no proscription for including those two concepts in one document if indeed they are separate. In this case both were included in one document.
I find it appropriate to quote the Missouri Court of Appeals which said that a case such as this "presents one of the most agonizing of all perplexities that can be cast upon mortal tribunals for determination  how best to resolve hostilities involving innocent children of tender years." In re D, Mo. App., 408 S.W.2d 361 (1966). Had this case initially been resolved expeditiously in favor of the natural mother, I would not quarrel with that result. At this point in time I reiterate my belief that the effect of the majority opinion is to psychologically cut this baby in two. I cannot agree with such a result. Far from being in the best interests of the child, it is in the worst interests of the child.
I would affirm the district court.
NOTES
[*] Retired November 30, 1985.