836 So.2d 1106 (2003)
Ralph GIANNI, Appellant,
v.
Joseph KERRIGAN, Appellees.
No. 2D01-3101.
District Court of Appeal of Florida, Second District.
February 12, 2003.
Jordan L. Wallach, Sarasota, for Appellant.
Joseph Kerrigan, pro se.
DAVIS, Judge.
Ralph Gianni challenges the trial court order that issued a permanent injunction against repeat violence against him based on the petition of Joseph Kerrigan. Section 784.046, Florida Statutes (2000), provides that there must be two incidents of violence, as defined by the statute, before the court may issue such an injunction. However, the instant record only supports a finding of one incident of violence. We therefore conclude that the court erred in issuing the injunction.
Section 784.046 creates a cause of action for an injunction for protection in cases of repeat violence, which is defined as "two incidents of violence or stalking committed by the respondent." § 784.046(1)(b). The statute defines the term "violence" as: "any assault, battery, sexual battery, or stalking by a person against any other person." § 784.046(1)(a).
In his petition, Kerrigan alleged two incidents of violence, one occurring on May 3, 2001, and one occurring on April 29, 2001. The petition described the May 3, 2001, incident at the Holiday Inn on Lido Beach as follows:
I was sitting at the bar having a beer. Ralph walked in while arguing on his cell phone. He then slammed the phone down, bar tender and security guard walked away. He waited then threw me off bar stool, put his foot on my mouth, grabbed my pinky finger on left hand and kicked me in back of neck. While he was doing this he was screaming that he was going to kill me and that I'd be hearing from him soon and this wasn't over.
The petition described the April 29, 2001, incident as follows: "Ralph made multiple phone calls saying that he was going to kick my ass whenever he saw me."
At the hearing, Kerrigan described the May 3, 2001, incident essentially as he did in his petition. However, when he testified about the April 29, 2001, telephone *1107 calls, he clarified that Gianni had made three phone calls to Kerrigan on that day, only one of which Kerrigan actually listened to before hanging up. With reference to whether he was placed in fear as a result of the calls, Kerrigan stated: "Well, that'syou know, at the time, some people call me up, they get upset, whatever. It wasn't a big incident. I didn't think I needed an injunction for phone calls. But I do for violence." On cross-examination, the following discussion ensued regarding the phone calls:
Q. You said that you didn't think anything of the incident with the phone calls? You didn't think you needed an injunction or anything?
A. Not at that time, no, because
Q. And you
A. it's just threat, you know, minor stuff.
Q. And you weren't in fear at that time?
A. No, I
Q. You weren't afraid?
A. My bone wasn't busted. I wasn't threatened. You know, somebody says something to you, you know, you blow it off. I didn't think he'd do anything.
Kerrigan's testimony demonstrates that the phone calls on April 29, 2001, do not qualify as a second incident for purposes of the statute. The statute requires that the respondent commit some type of violence upon the petitioner. Under the statutory definition of violence, Gianni's phone calls did not even qualify as an assault because Kerrigan testified that he was not put in fear by the calls.
While the incident on May 3, 2001, at the Holiday Inn appears to have qualified as an incident of violence under the statute, since the April 29, 2001, phone calls do not meet the statutory definition of violence, Kerrigan did not allege or prove two incidents of violence and, accordingly, failed to put on a prima facie case entitling him to an injunction.
Reversed.
ALTENBERND, C.J., and CANADY, J., Concur.