THOMAS, J.
Appellant challenges the trial court’s order granting a permanent injunction for protection against repeat violence. Ap-pellee sought the injunction on behalf of Appellee’s daughter, who is a minor. Appellant asserts that the order is invalid, because she did not commit two acts of violence against Appellee’s daughter, as required under section 784.046(2), Florida Statutes (2012). Appellant concedes that she committed one act of violence, but asserts that the evidence does not establish the necessary second act of violence to meet the statutory criteria. Alternatively, Appellant asserts that even if the trial court could issue the injunction, the provision banning her from attending any Duval County Public School is overbroad and unconstitutional.
Conversely, Appellee argues that in order to protect minors, section 784.046(2), Florida Statutes (2012), was amended in 1999 to provide that parents or legal guardians may seek to obtain protective injunctions “against repeat violence.” By use of the phrase “against repeat violence,” Appellee asserts that only one act of violence is required to support the trial court’s order granting a permanent injunction against repeat violence. We reject Appellee’s proposed interpretation of the statute, because the statute’s unambiguous language requires the showing of two acts of violence.
As we discuss below, under the strict separation of powers requirement of Article II, section 3 of the Florida Constitution, we must interpret the statute as written by the Legislature. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). Thus, we must vacate the injunction, regardless of the heinous nature of Appellant’s violent attack of Appellee’s daughter, as the undisputed facts below do not constitute two acts of violence as defined by the statute.

Facts

Appellee filled out the standardized form for a petition seeking an injunction against repeat violence to protect her daughter. Appellee’s petition described only one act of violence by Appellant. Specifically, Ap-pellee’s petition alleged that Appellee’s daughter left school grounds with Appellant’s friend to go to a convenience store. Before reaching the store, Appellee’s daughter was approached by Appellant and several friends, some of whom used their cellphones to record the incident.
Appellant then proceeded to brutally batter Appellee’s daughter, slamming her head against a concrete wall. Appellee did not allege any other incidents and left the section of the form blank that requested information on any other incidents. A Jacksonville Sheriffs Office Incident Report, attached to the petition, stated that Appellee’s daughter sustained a Basal skull fracture, severe concussion, mild abrasions, and contusions to her head. A temporary injunction for protection against repeat violence was issued, and a hearing proceeded on the permanent injunction at issue here.
At the hearing, Appellee’s daughter testified that on the morning of the attack, she saw Appellant and a group of individuals walking toward her. She knew Appellant was going to attack her, because some individuals in the group were preparing to record the incident. Appellant then confronted Appellee’s daughter, and Appellant said she was going to beat her. When Appellee’s daughter tried to walk away, Appellant grabbed her head, slamming it into a concrete wall. Appellee’s daughter testified that she did not remember anything after her head was slammed into the *636 wall. She further testified that she had no contact with Appellant after the incident, and she was afraid of Appellant. In addition, Appellee’s daughter said she was in fear for her life after the beating occurred.
Appellee’s counsel also submitted Face-book messages which were exchanged between Appellant and Appellee’s daughter the evening before the attack. In the Facebook message, Appellant threatened to physically beat Appellee’s daughter because of a perceived insult. At the hearing, Appellee’s daughter maintained that she did not think Appellant would in fact attack her, but nevertheless tried to dissuade Appellant by disavowing any unfavorable behavior toward Appellant. Appellee also admitted that she saw the Facebook messages between her daughter and Appellant the night before the incident, but her daughter told her that she did not think that a fight would occur.
Following Appellee’s presentation of evidence and testimony, Appellant moved to dismiss the petition, asserting that Appel-lee had not established two acts of violence, as required under the statute. Opposing the motion, Appellee argued that the statute required only one act of violence to protect minors, focusing on the undisputed evidence of the severe beating.
The trial court denied Appellant’s motion to dismiss. But the trial court would not specify whether it was finding that one or two acts of violence were required under the applicable statute or how many acts of violence had been established as defined by the statute. Despite Appellant’s repeated requests that the trial court explain the rationale for its ruling granting the injunction, the trial court simply stated that based upon evidence and testimony, it was entering a permanent injunction. The injunction prohibited Appellant from having any contact with Ap-pellee’s daughter or going within 500 feet of her residence. In addition, the trial court further found that Appellant was a threat to all children at any school, and thus prohibited Appellant from returning to any public school in Duval County, even though Appellee did not request this relief.
After the trial court entered the injunction, Appellant filed a motion for reconsideration or rehearing, asserting that two acts of violence were required under the language of the statute and Appellee’s counsel had conceded that two acts of violence were not proven. The trial court denied the motion without providing any further reasoning, and this appeal follows.

Analysis

“To the extent it rests on factual matters, an order imposing a permanent injunction lies within the sound discretion of the trial court and will be affirmed absent a showing of abuse of discretion.” Operation Rescue v. Women’s Health Ctr., Inc., 626 So.2d 664, 670 (Fla.1993), overruled on other grounds by Madsen v. Women’s Health Ctr., Inc., 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994). “To the extent it rests on purely legal matters, an order imposing an injunction is subject to full, or de novo, review on appeal.” Id. Thus our standard of appellate review regarding the statute’s definition of “repeat violence” is de novo.
Section 784.046(2), Florida Statutes (2012), states:
(2) There is created a cause of action for an injunction for protection in cases of repeat violence, there is created a separate cause of action for an injunction for protection in cases of dating violence, and there is created a separate cause of action for an injunction for protection in cases of sexual violence.
(a) Any person who is the victim of repeat violence or the parent or legal *637 guardian of any minor child who is living at home and who seeks an injunction for protection against repeat violence on behalf of the minor child has standing in the circuit court to file a sworn petition for an injunction for protection against repeat violence.
(Emphasis added.)
Appellee asserts that a 1999 legislative amendment, which added the bolded language in subparagraph (2)(a), created an exception to the requirement of two incidents of violence to protect minor children. Appellee argues that the phrase “against repeat violence” demonstrates that a parent need only prove one violent act in order to prevent “repeat violence.” (Emphasis added.) We reject Appellee’s argument, because the plain and unambiguous text of the statute leads to only one reasonable conclusion. That is, that the Legislature was providing parents or legal guardians with legal standing to obtain an injunction for protection on behalf of a minor, not to reduce the required substantive elements for obtaining the injunction.
“Standing” is “a party’s right to make a legal claim or seek judicial enforcement of a duty or right.” Black’s Law Dictionary 1142 (8th ed. 2004). The language that Appellee cites to support her position, “injunction for protection against repeat violence,” was already present in section 784.046(2)(a), before the 1999 amendment was enacted regarding parents and guardians. Read in context, “injunction for protection against repeat violence” is the name the Legislature gave to the injunction, and not what is required to obtain such injunctive relief.
This interpretation is supported by the language of section 784.046(2), which states: “There is created a cause of action for an injunction for protection in cases of repeat violence .... ” § 784.046(2), Fla. Stat. (2012) (emphasis added). “Repeat violence” is unambiguously defined in section 784.046(l)(b) as “two incidents of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner or the petitioner’s immediate family member.” (Emphasis added.) This definition of “repeat violence” was not amended by the Legislature in the 1999 amendment.
As held by the Florida Supreme Court in Jones v. ETS of New Orleans, Inc.:
A basic tenet of statutory interpretation is that a “statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts.” Acosta v. Richter, 671 So.2d 149, 153-54 (Fla.1996). Accordingly, “statutory phrases are not to be read in isolation, but rather within the context of the entire section.” Id. at 154. In other words, “[j]ust as a single word cannot be read in isolation, nor can a single provision of a statute_ A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme.” Smith v. United States, 508 U.S. 223, 233, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993).
793 So.2d 912, 914-15 (Fla.2001). Here, reading the statute as a whole, we must reject Appellee’s argument that the 1999 amendment allows a trial court to grant an injunction against repeat violence based on one act of violence.
Additional statutory language supports our interpretation. A separate subsection of section 784.046, which provides for a cause of action for an injunction for protection in cases of sexual violence, defines “sexual violence” as “any one incident ” of the enumerated acts listed. See § 784.046(l)(c), Fla. Stat. (2012) (emphasis added). Thus, if the Legislature had intended to amend the statute at issue here *638 to provide a lower threshold of proof for obtaining an injunction on behalf of a minor, it knew precisely how to do so, as the Legislature did in the context of sexual violence. “It is a general canon of statutory construction that, when the legislature includes particular language in one section of a statute but not in another section of the same statute, the omitted language is presumed to have been excluded intentionally.” L.K. v. Dep’t of Juvenile Justice, 917 So.2d 919, 921 (Fla. 1st DCA 2005); see also Scalia and Gardner, Reading Law: The Interpretation of Legal Texts 124 (1st Ed. 2012) (“Where the legislature has specifically used a word or term in certain places within a statute and excluded it in another place, the court should not read that term into the section from which it was excluded.”) (quoting Matter of Voss’ Adoption, 550 P.2d 481 (Wyo.1976)).
Adhering to this general canon of statutory construction, which properly respects legislative authority, we interpret the omission of any language changing the definition of repeat violence, and the unambiguous language defining “repeat violence” as two incidents of violence, to require a parent or legal guardian to establish two acts of violence to obtain an injunction for protection against repeat violence in cases involving minor children. Had the Legislature intended to reduce the requisite acts of violence in such cases, it would have revised the definition of “repeat violence” in section 784.046(l)(b).
Thus, we do not possess the constitutional authority to interpret the statute in the manner argued by Appellee, under Florida’s strict and specific separation of powers requirement of the Florida Constitution, no matter how laudable might be the result in this case. Article II, section 3, states: “The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.” In Holly v. Auld, our supreme court recognized that “courts of this state are ‘without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.’ ” 450 So.2d at 219 (quoting Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968) (bolded emphasis added; italicized emphasis supplied)); see also State v. Egan, 287 So.2d 1, 7 (1973) (recognizing that “[ujnder our constitutional system of government, however, courts cannot legislate.”). Because the Legislature did not provide that a parent or legal guardian may obtain a permanent injunction against repeat violence on behalf of a minor child based on a single act of violence, we are without constitutional authority to decide otherwise.
As two acts of violence are required under the statute, we have closely examined the facts of this case to determine whether Appellant may have committed two acts of violence. If so, we would have upheld the injunction under the “tipsy coachman” doctrine, which allows appellate courts to affirm judgments if right for any reason. See Robertson v. State, 829 So.2d 901, 906-07 (Fla.2002) (stating that “tipsy coachman” doctrine allows an appellate court to affirm a ruling by the trial court that reached the right result, but for wrong or different reasons when any theory or principle of law in the record would support the ruling).
But here we conclude that the requirements for the injunction were not met in this appeal, as there is no evidence of two acts of violence. Although Appellant *639 committed a vicious attack on Appellee’s daughter, Appellee argued below that only a single act was required under the statute. Thus, she never described two distinct acts of violence. Even on appeal, Appellee has not explained to this court what two specific acts of violence under the statutory definition are established by the undisputed facts of this case. Instead, Appellee makes a general assertion that the trial court considered “evidence of other offending acts” without specifying the facts that would establish two offenses of violence under the statute. Appellee’s main focus on appeal is her contention that the statute only required one act of violence, an argument we must reject.
Subsection 784.046(l)(a) defines “violence” as “any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, or false imprisonment, or any criminal offense resulting in physical injury or death, by a person against any other person.” Appellant does not dispute that the brutal battery she committed against Appellee’s daughter establishes one incident of violence, but asserts that the facts here do not support a finding of a second incident of violence. We must agree, as there is no evidence in the record to support any additional act of battery or aggravated battery. Additionally, there is no evidence in the record to establish any of the other enumerated offenses under subsection 784.046(l)(a).
In particular, we independently considered whether Appellant’s Faeebook messages could constitute assault and establish a second act of violence. An “assault” is “an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.” § 784.011, Fla. Stat. (2012) (emphasis added). To prove assault, section 784.011, Florida Statutes, requires proof of the following three elements: “(1) an intentional, unlawful threat; (2) an apparent ability to carry out the threat; and (3) creation of a well-founded fear that the violence is imminent.” H.W. v. State, 79 So.3d 143, 145 (Fla. 3d DCA, 2012) (citing Benitez v. State, 901 So.2d 935, 937 (Fla. 4th DCA 2005)). Here, the undisputed evidence does not support a finding that Appellant committed assault by sending the threat by Faeebook message on the night before the battery. See, e.g., Russell v. Doughty, 28 So.3d 169, 170 (Fla. 1st DCA 2010) (holding that yelling profanities and threats at the petitioner, even after a previous battery by respondent against petitioner, was not sufficient for a finding of “repeat violence” without evidence that respondent took an action creating a “well-founded fear that violence was imminent”); Santiago v. Towle, 917 So.2d 909, 911 (Fla. 5th DCA 2005) (holding that a respondent’s statement to a third party that he “had a gun and was not afraid to use it” did not constitute an incident of violence because there was no “overt act indicating an ability to carry out the threat or justifying a belief that violence was imminent”); Perez v. Siegel, 857 So.2d 353, 354-55 (Fla. 3d DCA 2003) (explaining that verbal threats without an overt act creating a well-founded fear that violence was imminent were insufficient to qualify as assault under the statute); Gianni v. Kerrigan, 836 So.2d 1106, 1107 (Fla. 2d DCA 2003) (finding that phone calls did not qualify as acts of violence when the petitioner testified that he was not put in fear by the calls); Orr v. Koutsogiannis, 829 So.2d 962 (Fla. 4th DCA 2002) (holding that the evidence only supported one instance of violence; subsequent threats which were not taken seriously by petitioner did not amount to violence under section 784.046); *640 Johnson v. Brooks, 567 So.2d 34, 35 (Fla. 1st DCA 1990) (holding that numerous harassing phone calls, some containing threats, were not sufficient to support trial court’s decision to grant injunctive relief).
Beyond the enumerated offenses, we also considered whether the facts could support a second act of violence under the provision contained in subsection 784.046(l)(a), which further defines “violence” to include “any criminal offense resulting in physical injury or death, by a person against any other person.” The undisputed facts, however, do not establish a second criminal offense “resulting in physical injury or death.”
If subsection 784.046(l)(a) had contained a provision similar to the prison releasee reoffender (PRR) sentencing statute, under section 775.082(9)(a)l., Florida Statutes (2012), we could affirm the injunction here. Section 775.082(9)(a)l., in pertinent part, outlines those enumerated crimes that establish that a defendant is qualified to be sentenced as a PRR and includes as a qualifying PRR offense “[a]ny felony that involves the use or threat of physical force or violence against an individual.” (Emphasis added.) See also State v. Hackley, 95 So.3d 92, 94 (Fla.2012) (holding that burglary of a conveyance with an assault, although not an enumerated offense under the PRR sentencing statute, was a qualifying PRR offense, as it was a felony that fell under the subsection covering “[a]ny felony that involves the use or threat of physical force or violence against an individual.”).
If the Legislature had included language in section 784.046 that applied to felonies involving the “threat” of violence, then Appellant’s Facebook message to Appellee’s daughter would have qualified as a second offense under section 836.10, Florida Statutes (2012). That statute provides that any person who composes and sends an electronic communication containing a threat to kill or to do bodily injury to the person to whom such communication is sent commits a second-degree felony, punishable by up to fifteen years in state prison. See O’Leary v. State, 109 So.3d 874 (Fla. 1st DCA 2013) (holding that written threats posted on Facebook page constituted sending written threats to kill or do bodily harm in violation of § 836.10, Fla. Stat.). In O’Leary, the appellant was convicted and sentenced to ten years in state prison for violating this statute. But our decision must be based on the current language of the statute, which requires two act of violence. Here, the record on appeal contains no evidence to support a finding of two incidents of violence, as defined by the statute.
Accordingly, we reverse and remand for the trial court to vacate the injunction for protection against repeat violence. We do not address Appellant’s argument regarding the terms of the injunction, as it is unnecessary in light of our holding vacating the injunction.
REVERSED and REMANDED with instructions to vacate the injunction.
RAY, J., Concurs; MAKAR, J., concurs with opinion.