In the Matter of the ADOPTION OF GSD, a Minor Child.

In the Matter of the TERMINATION OF the RIGHTS OF JWR.

JWR, Appellant (Respondent),

v.

RG, Appellee (Petitioner).

No. C–85–3.

Supreme Court of Wyoming.

April 1, 1986.

Vincent A. Ross, of Ross & Ross, Cheyenne, for appellant.

Bert T. Ahlstrom, Jr. (argued), and Kay Snider Coffman, Cheyenne, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

This is an appeal by a child's natural father from a district court's decree of adoption in favor of the child's stepfather. The decree terminated the natural father's parental rights. We affirm.

## FACTS

On August 9, 1981, TG gave birth to a baby boy, GSD. Appellant was the child's natural father who, until two months prior to the child's birth, lived with TG out of wedlock. TG and appellant never married and never resumed their cohabitation.

Although appellant never wanted TG to have the baby and suggested an abortion three months into TG's pregnancy, he visited the hospital immediately after his son's birth. He brought some baby toys and clothes as a gift but never offered to pay the expenses of the difficult cesarean birth. He refused to acknowledge his parenthood by signing the birth certificate at the hospital and never tried to establish paternity through any other legal process.

From August 1981 until February 1983 appellant visited his son and TG about once or twice a month for one or two hours at a time. TG was living at her parent's house during this period. Although appellant had a moderate income from a steady job, he provided no financial support for the child. TG testified at trial that appellant never offered any support, but he said that he made numerous offers which TG refused.

In September of 1982, TG met RG; and, after a nine-month courtship, they were married. TG and her child moved into RG's home, and he supported them by working both a full-time and part-time job. Appellant's visits with the child ended in February of 1983 when it became apparent that TG and RG would marry. TG testified that appellant's visits stopped because he did not want to see his son, but appellant said that she prevented his visits by refusing his phone calls. In any event, between February of 1983 and January of 1985, when the adoption hearing took place, appellant never visited his son.

RG filed a petition for adoption and termination of parental rights on October 24, 1984, a little over a year after he married TG and began supporting her and the child. Appellant filed an answer contesting the petition, and RG moved to strike that answer on grounds that appellant lacked standing because he had never legally established his paternity. The district court denied the motion and the case was tried.

RG explained at trial that he wanted to adopt GSD because he had "been pretty much the father of the child since [he had] known [TG]," and because he loved the child very deeply. TG and her mother testified in favor of the adoption, while appellant, several of his friends, and family members testified on his behalf.

In a carefully drafted letter opinion, the district court held that appellant had stand-

ing to object to the child's adoption but, on the merits, the court held that RG's petition for adoption should be granted and appellant's parental rights terminated. The court based its holding on § 1–22–108(c), W.S.1977, which states:

"If the putative father files and serves his objections to the petition to adopt as provided in subsection (b) of this section, and appears at the hearing to acknowledge his paternity of the child, the court shall hear the evidence in support of the petition to adopt and in support of the objection to the petition and shall then determine whether:

"(i) The putative father's claim to paternity of the child is established;

"(ii) The putative father having knowledge of the birth or pending birth of the child has evidenced an interest in and responsibility for the child within thirty (30) days after receiving notice of the pending birth or birth of the child;

"(iii) The putative father's objections to the petition to adopt are valid; and

"(iv) The best interests and welfare of the child will be served by granting the putative father's claim to paternity or by allowing the petition to adopt."

Specifically, the court found that appellant's paternity was established for the purposes of subsection (i) and that he had evidenced an interest in and a responsibility for the child within 30 days of his birth as required by subsection (ii). But the court also found that appellant "deliberately and willfully abandoned [GSD] by his actions and [had] taken no substantial action for a period in excess of twenty months * * * to be a parent to the child in question." Additionally, "[n]o evidence was produced by [appellant] that the quality of the relationship between [RG] and the minor child was anything but satisfactory." Therefore, according to the court, appellant did not demonstrate a valid objection to the adoption as demanded by subsection (iii). Finally, the court held that the best interests of the child would be served by permitting the adoption by RG who had already assumed the role of father. Because there were no valid objections to the adoption and because the adoption was in the best interests of the child, the court granted the petition and terminated any surviving parental rights held by appellant.

## APPELLANT'S BRIEF

■ Rule 5.05, W.R.A.P., states in pertinent part:

"Except by permission of the court, principal briefs shall not exceed 50 printed pages by letter press or 70 pages by any other process of duplicating or copying, exclusive of pages containing the table of contents, tables of citations, and any addendum containing statutes, rules, regulations, etc."

Appellant's brief is 77 pages long, seven pages over the limit. Pages 19 through 57 consist solely of quotations of the transcript rearranged to suit appellant. Many of the quotations simply repeat appellant's statement of facts which already contain record references.

This court is perfectly capable of reading the original transcript, taking special note of the portions cited in the briefs. And, even discounting the 38 pages of repetitious facts, it is hard to see why it took appellant 39 additional pages to present his arguments. The issues were simple enough to allow RG to make his point in 16 pages. These documents are called *briefs* for a reason.

We will not overlook appellant's violation of both Rule 5.05 and common sense. We have deliberately ignored pages 71 through 77 of appellant's brief which deal with the abandonment issue and the best interests of the child. This sanction is specifically mentioned in Rule 1.02, W.R.A.P., which states in part:

"The failure to comply with any other of these rules or any order of court does not affect the validity of the appeal, but is ground only for such action as the reviewing court deems appropriate, including but not limited to * * * refusal to consider the offending party's contentions * * *."

## THE PROPER ISSUE

Appellant has misunderstood the basis of the district court's decision. Of the six issues he identifies for our review, five involve the willful abandonment of the child. Apparently he believes that the district court relied upon § 1–22–110, W.S. 1977, which states in part:

> *"In addition to the exceptions contained in W.S. 1–22–108,* the adoption of a child may be ordered without the written consent of the parents or putative father * * * if the court finds that the nonconsenting parent or putative father has:
>
> *     *     *     *     *     *
>
> "(iii) Willfully abandoned or deserted the child." (Emphasis added.)

But the district court never relied upon § 1–22–110 in its letter opinion or order. The court only discussed appellant's willful abandonment because it tended to show that his objections to the adoption were not valid. The validity of appellant's objections was, in turn, only one factor in the court's analysis under § 1–22–108(c), W.S.1977.

The district court properly treated § 1–22–108(c), W.S.1977, as a complete and independent adoption statute. Three facets of the statutory scheme show that the legislature intended the statute to apply in some contested adoptions, regardless of whether § 1–22–110, W.S.1977, might also apply. First, § 1–22–110, W.S.1977, treats § 1–22–108 as an independent basis for an adoption. Section 1–22–110 begins with the following proviso:

> *"In addition to the exceptions contained in W.S. 1–22–108, W.S.1977,* the adoption of a child may be ordered without the written consent of the parents or putative father if * * *." (Emphasis added.)

Second, § 1–22–108 contains substantive law which provides an alternative procedure for contested adoptions. At the hearing, the district court is to take evidence on each of the four factors identified in subsections (i) through (iv) of § 1–22–108(c), supra. Once the district court has heard the evidence, subsection (e) of § 1–22–108 permits it to base its decision on the manner in which the factors balance. Subsection (e) states:

> "Based upon its determination and findings after a hearing, the court may enter its order or decree in accordance with W.S. 1–22–111."[1]

Finally, an important distinction between these two statutes is that § 1–22–110 provides grounds for an adoption when *either the child's parents or his putative father fails to consent* but § 1–22–108 applies *only when the nonconsenting party is a putative father.* The scheme makes perfect sense. Section 1–22–110 provides a set of circumstances, such as the nonconsenting party's abuse, abandonment or failure to support the child, under which an adoption is justified no matter who the nonconsenting party is. But the more liberal adoption test of § 1–22–108 applies to only those adoptions contested by putative fathers who have already shown their lack of concern for their children by failing to establish legal paternity. This scheme functions as the legislature intended when we recognize § 1–22–108 as a ground for adoption fully independent of § 1–22–110.

In summary, the district court applied § 1–22–108 as the legislature intended— without regard to the requirements of § 1–22–110. Appellant's willful abandonment was just one factor the court considered when trying to decide whether appellant's objections were valid. We will review the willful abandonment finding, as well as the court's other findings, as part of the four-part test of § 1–22–108(c).

### SECTION 1–22–108, W.S.1977

Although § 1–22–108, W.S.1977, was first enacted in 1977, this is the first case in which we must review its application by a district court. See, 1977 Wyoming Session Laws, ch. 187, § 1 (first codified as

---

1. Section 1–22–111, W.S.1977, sets forth the court's options ranging from a decree of adop-

tion to complete denial of the petition.

§ 1–726.8, W.S.1957). In most contested adoptions, the adopting parties rely on § 1–22–110. See, e.g., *Matter of Adoption of CCT*, Wyo., 640 P.2d 73 (1982).

Several principles which we have applied to contested adoptions under § 1–22–110 should apply equally under § 1–22–108. First,

" '[A]doption statutes are strictly construed when the proceeding is against a nonconsenting parent and every reasonable intendment is made in favor of that parent's claims.'

"Such strict construction is mandated by the fact that parental rights are fundamental rights." (Citations omitted.) *Matter of Adoption of CCT*, supra, at 74–75, quoting *Matter of Adoption of Voss*, Wyo., 550 P.2d 481, 485 (1976).

Second, a district court's factual determinations in a contested adoption can be reversed only if the court has abused its discretion.

" 'A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.' " *Matter of Adoption of CCT*, supra, at 76, quoting *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980).

Our review of both the record and the district court's letter opinion reveals that the court strictly construed § 1–22–108 in favor of appellant, the natural father. It is also clear that the district court wisely exercised its discretion under the four-part test.

### SUBSECTION (i)—STANDING

■ The first part of the four-part test, subsection (i) of § 1–22–108(c), is really a standing requirement. It compels the district court to determine whether "[t]he putative father's claim to paternity of the child is established." A putative father is `

defined for purposes of an adoption proceeding as

"the alleged or reputed father of a child born out of wedlock, whether or not the paternity rights and obligations of the father have been judicially determined." Section 1–22–101(a)(iv), W.S.1977.

The district court correctly held that appellant was a putative father under this definition.

Next, § 1–22–108(d) tells us when the putative father's claim to paternity is established for purposes of a contest. It states:

"The putative father has no right to assert paternity in adoption, dependency or terminations of parental rights proceedings unless he is known and identified by the mother or agency, or unless he has lived with or married the mother after the birth of the child and prior to the filing of the petition to adopt, and unless prior to the interlocutory hearing of the adoption proceedings, he has acknowledged the child as his own by affirmatively asserting paternity as provided in W.S. 1–22–108."

Although TG never lived with appellant after the birth of her child, she identified him as the natural father at trial. In addition, appellant acknowledged the child as his own when he filed a timely answer in which he affirmatively asserted his paternity. The district court correctly held that appellant had a right to claim paternity under § 1–22–108(d) and that his claim to paternity was therefore established for purposes of § 1–22–108(c)(i).

RG argues that appellant had no standing to contest the adoption because he failed to establish his paternity within three years of GSD's birth as required by § 14–2–105, W.S.1977. We agree with the district court, however, that the explicit standing requirement of § 1–22–108 must control in the adoption context. "General legislation must yield to special legislation on the same subject whether provisions are found in the same statute or in different statutes." *Department of Revenue and Taxation v. Irvine*, Wyo., 589 P.2d 1295,

1299 (1979). Moreover, when the legislature defined putative father to include an alleged father "whether or not the paternity rights and obligations of the father have been judicially determined," § 1–22–101(a)(iv), W.S.1977, supra, it clearly indicated that an official declaration of paternity was not relevant to contested adoption cases. Finally, the rule of strict construction in favor of the contesting parent supports our reliance on the liberal standing provision of § 1–22–108(d). In summary, we hold that the district court correctly found that appellant had standing to contest the adoption and had established a claim to paternity as required by § 1–22–108(c)(i).

### SUBSECTION (ii)—PUTATIVE FATHER'S INTEREST AND RESPONSIBILITY

■ The second factor the district court must consider is whether the putative father "has evidenced an interest in and responsibility for the child within thirty (30) days after receiving notice of the pending birth." Section 1–22–108(c)(ii), W.S.1977. There is no dispute that the district court correctly held that appellant expressed an interest in the child within the 30-day period. Appellant visited the child immediately after birth. RG claims, however, that appellant did not evidence responsibility because he never offered to pay for the birth or to support the child. There was some evidence, however, that appellant offered his support immediately after the birth, and it is undisputed that he brought substantial gifts for the child, including clothing, at the initial visit. Appellant's failure to assert responsibility at a later date is not relevant to subsection (ii). That subsection only requires that he show some responsibility during the 30 days after birth. We cannot say that the district court abused its discretion when it held that appellant asserted both interest and responsibility within 30 days after GSD's birth.

### SUBSECTION (iii)—VALIDITY OF THE OBJECTIONS

■ The next factor which the district court must consider under § 1–22–108(c) is the validity of the contesting father's objections. In this case, the district court found that appellant's objections were invalid, and we agree. First, the court pointed out that appellant's stance was essentially defensive because he was trying to prevent the adoption. Yet, appellant produced no evidence "that the quality of the relationship between [RG] and the minor child was anything but satisfactory."

Second, the district court found that appellant had willfully abandoned the child by failing to visit him for 20 months prior to the trial. The finding of abandonment was an important factor in determining the validity of appellant's objections and would have independently supported the court's decree if the court had chosen to apply § 1–22–110(a)(iii), W.S.1977.

Appellant argues that the court was required to find that the abandonment was willful by clear and convincing evidence before it could grant the adoption. This argument misses the mark, primarily because willful abandonment was just a factor in the court's analysis under § 1–22–108(c)(iii). The abandonment finding did not make or break RG's case for the adoption. Also, appellant has cited no applicable authority requiring the clear-and-convincing-evidence standard. He refers us to *DS v. Department of Public Assistance and Social Services*, Wyo., 607 P.2d 911 (1980), a case in which the State sought to break up a natural family under the termination of parental rights statutes, §§ 14–2–308 through 14–2–319, W.S.1977 (Cum. Supp.1985). That case does not apply here where the putative father has never been in the same household with the child; where the termination will cement an ongoing family relationship between the child and its natural mother; and where the termination occurs through the adoption statutes rather than the termination of parental rights statutes.

Finally, the clear-and-convincing-evidence standard would not have affected the result in this case even if it applied. The evidence was overwhelming that appellant

willfully abandoned the child. In abandonment cases

"willfully means intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *Matter of Adoption of CCT,* supra, 640 P.2d at 76.

Appellant did not visit his child for 20 months prior to the trial although he knew the location of the child at all times. He never tried to establish his paternity through legal process and never attempted to be a father to the child in any substantial way.

In summary, the district court did not abuse its discretion when it found a good relationship between the child and the adopting stepfather and when it found that appellant had willfully abandoned the child and was, therefore, in a poor position to object to the adoption. The court correctly held that appellant had no valid objections to the adoption.

### SUBSECTION (iv)—BEST INTERESTS OF THE CHILD

We will not fully address appellant's argument that the adoption was against the best interests of the child because that argument begins on page 73 of his brief. The district court carefully analyzed the child's best interests in its letter opinion; and, having reviewed the record, we agree completely with the court's conclusions. The adoption was in the best interests of the child.

Although appellant established his paternity for purposes of subsection (i) of § 1–22–108(c), and demonstrated his initial interest and responsibility for the child under subsection (ii), he failed to present valid objections as required by subsection (iii), and he failed to rebut RG's strong evidence that the adoption was in the best interests of the child under subsection (iv). The district court did not abuse its discretion in granting this adoption.

### COSTS

Appellee RG argues in his brief that the appeal was so frivolous that he is entitled to costs and damages. He cites Rule 10.05, W.R.A.P., which states in pertinent part:

"When, in a civil case, the judgment or final order is affirmed, appellee shall recover the cost for typewriting and reproducing his brief, such cost to be computed at the rate allowed by law for making the transcript of the evidence. Unless the court certifies that there was reasonable cause for the appeal, there shall also be taxed as part of the costs in the case, a reasonable fee, to be fixed by the court, not less than one hundred dollars ($100.00) nor more than five hundred dollars ($500.00), to the counsel of the appellee, and to the appellee damages in such sum as may be reasonable, not exceeding one thousand dollars ($1,000.00) * * *."

An award of damages and costs under this rule is inappropriate

"where a discretionary ruling of the trial court is the subject of the appeal, because 'the standards for review of discretionary exercise cannot readily be reduced to black-letter principles.'" *James S. Jackson Company, Inc. v. Meyer,* Wyo., 677 P.2d 835, 838 (1984) quoting *Bacon v. Carey Company,* Wyo., 669 P.2d 533, 536 (1983).

The district court's decision in this case was reviewable under an abuse-of-discretion standard. We must certify that appellant had reasonable cause for this appeal and, therefore, deny appellee's request for damages and costs other than the cost of reproducing and typewriting his brief.

Affirmed.