In the Matter of the **ADOPTION OF AMD**, a minor.

**MVF, Appellant (Petitioner),**

v.

**MF, Appellee (Respondent).**
(Two Cases)

In the Matter of the **ADOPTION OF ACD**, a minor.

**Nos. C–88–4, C–88–5.**

Supreme Court of Wyoming.

Dec. 30, 1988.

Lisa C. Sweeney of Schaefer & Associates, Laramie, for appellant.

Kaye Willis, Laramie, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY, and GOLDEN, JJ.

CARDINE, Chief Justice.

In these consolidated appeals, appellant MVF seeks review of district court orders denying his motions to vacate adoptions.

We reverse.

Appellant and appellee, his fiance MLD, met in 1986 and began dating in 1987. They cohabitated in her apartment during much of April 1987, and began living together in a shared apartment on April 25, 1987. During April 1987, they became engaged to marry. On May 1, 1987, appellant filed two separate petitions to adopt the two minor children of MLD. MLD is the natural mother of both children. The natural father of one of the two children consented to the adoption, and it was alleged that the father of the other child was unknown. An objection was filed by a person asserting that he was the natural father of the other child, but the objection was not pursued and the adoption proceeded on the basis that the father was unknown.

The petitions for adoption were filed in district court prior to the marriage of the parties. The district court deferred ruling on the petitions until after the planned wedding. Appellant and appellee were married on July 25, 1987. Thereafter a hearing was held and decrees of adoption were entered on August 26, 1987. These decrees purported to be final orders establishing appellant as the adoptive father of appellee's children. Very shortly after entry of the decrees of adoption, the marriage became troubled and, in early October of 1987, appellee and her children moved from his home and began living elsewhere.

On January 14, 1988, appellant filed motions to vacate the adoptions, asserting that the adoptions were finalized without compliance with the procedures set out in W.S. 1–22–111, that it was in the best interests of the children to vacate the adoptions, and that appellant's consent to adopt the children had been obtained by material mis-

representation. The district court found that appellant was estopped from challenging the validity of the adoptions because he had invoked the jurisdiction of the court, that he had failed to demonstrate material misrepresentation, and that it was in the best interests of the children that the adoptions be affirmed.

In this appeal, appellant asserts that the district court's failure to ensure compliance with W.S. 1–22–111 is fatal to the validity of the adoptions and that he should not be estopped from asserting noncompliance with that statute. Appellant also pursues his claim that the adoptions were procured by fraud or undue influence, but we need not address that issue because we resolve this case on the basis of noncompliance with the governing statutes.

■ Adoption was unknown at common law and, therefore, adoption statutes are to be strictly construed. *In re Adoption of MM*, 652 P.2d 974, 979 (Wyo.1982). Moreover, adoption is entirely statutory, and the proceedings must be conducted in substantial conformity with the provisions of the statute. *In re Adoption of Strauser*, 65 Wyo. 98, 196 P.2d 862, 866 (1948). In the Strauser case, this court noted that consent lies at the foundation of statutes of adoption and that the first duty of the judge is to see that all necessary consents are given. The court then continued: *"If they are not, the proceeding is at an end. There is nothing for the judge to approve."* (Emphasis added.) Id. 196 P.2d at 867. The principle enunciated in Strauser applies here. We are, therefore, concerned with the consent of the adopting parent as well as compliance with W.S. 1–22–111, which provides:

"(a) After the petition to adopt has been filed and a hearing held the court acting in the best interest and welfare of the child may make any of the following orders:

"(i) Enter an interlocutory decree of adoption giving the care and custody of the child to the petitioners pending further order of the court;

"(ii) Defer entry of an interlocutory decree of adoption and order the division of public assistance and social services within the department of health and social services or a private licensed agency to investigate and report to the court the background of the child and of the petitioners, and the medical, social and psychological background and status of the consenting parent and putative father. After a written report of the investigation is filed, the court shall determine if the adoption by petitioners is in the best interest and welfare of the child and thereupon enter the appropriate order or decree;

"(iii) Enter a final decree of adoption if the child has resided in the home of the petitioner for six (6) months; or

"(iv) Deny the adoption if the court finds that the best interests and welfare of the child will be served by such denial.

"(b) If the court denies the adoption it shall make an order for proper custody consistent with the best interest and welfare of the child."

■ W.S. 1–22–111(a) gives the district court four options. The only option the court could *not* have used was entry of a final decree of adoption as provided in (iii), for it is undisputed that at the time the decrees of adoption were entered on August 26, 1987, the children had *not* resided in the home of appellant for six months. Clearly, the district court did not defer entry of an interlocutory decree, which was option (ii), or deny the adoption, which was option (iv). We thus conclude that the August 26, 1987 decrees could only be interlocutory decrees described in option (i). Indeed, the court recognized this potential interpretation in his reasoning denying appellant relief. After premising its decision on the theory that appellant, having invoked the jurisdiction of the court, was estopped from challenging the validity of the adoptions, the district court said:

"If the Supreme Court were to say, you're incorrect on the estoppel issue and remanded for further proceedings, the Court then would be inclined, based on the findings that I have made here, to enter a final Decree of Adoption and

treat the previous Decree as an *interlocutory Decree.*" (Emphasis added.)

We agree that the August 26, 1987 decrees of adoption were interlocutory because it is undisputed that on August 26, 1987, the children had not resided in the home of petitioner for six months as required for entry of a final decree of adoption. A final decree of adoption thereafter could only be entered after the expiration of the six-month period in accordance with W.S. 1–22–112, which provides:

> "(a) If an interlocutory decree has been entered petitioners may apply for a final decree of adoption after the child has resided in the home of the petitioners for six (6) months and a hearing on the petition may be required."

The interlocutory decrees give only care and custody of the children to petitioners pending further order of the court. It is not a decree of adoption. The adoption can result only upon application of appellant for final decrees of adoption as required by W.S. 1–22–112(a). Failing such an application, the district court cannot, under these statutes which are clear and unambiguous and which must be strictly construed, enter final decrees of adoption.

■ The only question now remaining for our determination is whether an interlocutory decree can, by estoppel, become a final decree of adoption. As a preface to a consideration of what role estoppel should play in this case, we note that a fundamental consideration in all adoptions is the best interests and welfare of the affected children. This consideration is found in the statutes, and one can hardly find an adoption case that does not, in some place, use that phraseology. In this case, one of the findings of the district court in applying principles of estoppel was that the best interests of the children warranted entry of final decrees of adoption. But this puts the cart before the horse. The best interests and welfare of the child cannot become an issue in an adoption until the procedural requirements of the statutes have been met. Only then does the issue of whether the adoption is in the best interests of the child become the paramount consideration.

■ Although somewhat speculative, it is highly likely that this unfortunate situation might have been avoided entirely if the required statutory procedures had been strictly followed, as they should have been. The legislature has decided that before a final decree should issue, a child should reside with a petitioner for six months, and if an interlocutory decree issues, that interlocutory decree will be supplanted by a final decree only upon application by that petitioner. The six-month waiting period serves a real and vital purpose. It provides a period of time during which the parties can determine if they can adjust to living together in a family setting; if they are compatible; if the home is likely to be suitable, a happy place, rewarding and of benefit to all. Thus, strict adherence to the statutory procedures for adoption serves the best interests and welfare of all parties to an adoption. *Matter of Adoption of D.P.*, 583 P.2d 706, 709 (Wyo.1978) (Raper, J., specially concurring).

Because the procedural requirements for adoption were never satisfied, the court did not reach a point in the proceeding where the best interests of the children were a consideration. All that is left then to support the application of estoppel is that appellant petitioned the court through an attorney employed by appellee, and who still represents appellee, to adopt appellee's children. Why he is estopped to assert that the decree entered is not a final decree of adoption is difficult to comprehend. He has done nothing but refuse to proceed with the adoption after the expiration of the six-month period, if it did expire. To agree with appellee here might effectively convert every interlocutory decree into a final adoptive decree, for in every initial petition for adoption, the petitioner does represent to the court that he wishes to adopt—to be forever bound—even though the statute provides a six-month period for final decision.

■ Courts have found residency requirements to be a restraint on a court's powers and to be mandatory, albeit under circumstances considerably different from those extant in this case. 2 C.J.S. Adoption

of Persons, § 50 (nn. 83, 84) (1972). We also note that estoppel may play a considerably different role in circumstances where the validity of an adoption is challenged by collateral attack. 2 C.J.S. Adoption of Persons, §§ 124–129 (1972); *Nugent v. Powell*, 4 Wyo. 173, 201, 33 P. 23 (1893). However, a petition to set aside an adoption, or as it was styled in this case, a motion to vacate an adoption where the decree entered can only be an interlocutory decree, is not a collateral attack. 2 C.J.S. Adoption of Persons, § 124 (1972); 2 Am.Jur.2d Adoption, § 69 (1962). This is so particularly because the statute requires action on the part of a petitioner to have an interlocutory decree of adoption made final. Clearly, the appellant's motion to vacate the adoptions evinced withdrawal of his consents to the adoptions and was his decision not to adopt.

Adoption in Wyoming is a statutory proceeding and cannot be accomplished by private contract. It is held that: "If the relation of adoptive parent and child cannot be created by a private contract, it is equally certain that it cannot arise by estoppel." 2 Am.Jur.2d Adoption, § 8 (1962). Thus, we hold that appellant was not estopped from asserting the validity of the adoptions under the circumstances presented by this case. Our decision not to give effect to estoppel under these circumstances fully vindicates the policy goals of the adoption statutes, and we have held that we will not invoke estoppel to defeat the effective operation of a policy designed to protect the public interest. *Big Piney Oil and Gas Co. v. Wyoming Oil and Gas Conservation Commission*, 715 P.2d 557 (Wyo. 1986). Our application of the principles of estoppel would likely be wholly different if estoppel were invoked under circumstances which tended to defeat the purposes of the adoption statutes rather than to sustain them.

In reaching this decision, we are mindful of this court's holding in the case, *In re Adoption of Hiatt*, 69 Wyo. 373, 242 P.2d

214 (1952). In that case we found that a substantial compliance with the statutory requirement of six-month residency was sufficient. Id. 242 P.2d at 218. However, that opinion makes clear that the child did reside with the petitioners in that case for six months, and the challenge was based on assertions we characterized as ones which would have required petitioners to have made the child a prisoner in order to comply with the statute as to six-month residency. In contrast, in this case the children had clearly not been residing with the petitioner for the requisite six-month period at the time the decrees of adoption were entered.[1] Although our decision in Hiatt remains instructive, it has no application to the facts of this case.

In summary, we hold that the district court's orders of August 26, 1987, were interlocutory decrees of adoption. Absent an application by appellant, pursuant to W.S. 1–22–112(a), the district court had no authority to enter final decrees of adoption. If the decrees were to be made final, that process could have been initiated only by appellant after having fulfilled the requirement that the children reside with him for six months. The only filing made by appellant after the interlocutory decrees were entered was his motion to vacate the interlocutory decrees. Under these circumstances, the only action which the district court could have taken was to vacate the interlocutory decrees and to dismiss the petitions to adopt. The governing statutes permit no other alternatives.

Reversed and remanded with instructions to the district court to enter an order consistent with this opinion.

---

1. The district court counted all time from early April 1987, until the parties' marriage on July 25, 1987, as contributing to fulfillment of the six-month requirement. Although it is unnecessary to a determination of this case because the six-month requirement had not been met, even including all that time, we seriously question whether such cohabitation should have been counted for purposes of adoption under the circumstances of this case.