**In the Matter of the ADOPTION OF BBC.**

**BDR, Appellant (Respondent),**

v.

**BEB and PJB, Appellees (Petitioners).**

**No. C–91–4.**

Supreme Court of Wyoming.

April 22, 1992.

Rehearing Denied May 8, 1992.

Joe R. Wilmetti, Casper, for appellant.

Peter J. Feeney, Casper and J. Patrick Hand, Douglas, for appellees.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

This is an appeal by Appellant BDR, the putative father of BBC, from a judgment and final decree of adoption denying him the custody of his child, terminating his parental rights, and declaring the child adopted by Appellees BEB and PJB, the adoptive parents.

We reverse the order terminating the father's parental rights and the order decreeing the adoption of the child, affirm the order denying custody of BBC to the father, and remand for further proceedings

**198** 

regarding the care, custody, and control of the child.

The father states:

A. The primary issue presented for review is:

Did the District Court err in terminating Appellant's parental rights and granting an adoption to ... Appellees[?]

B. Additional and related issues are [as] follows:

1. In the light of the record did the District Court err in denying custody to Appellant at the hearing on Habeas Corpus on September 19, 1990?

2. Did the District Court err in ordering upon its own motion, a blood test when there was no dispute as to paternity?

3. Did the District Court err at the hearing on February 8, 1991, in refusing to grant custody to or, at the least, visitation rights to the Appellant?

4. Did the District Court err in hearing evidence over Appellant's continuing objection aimed toward the "best interest of the child" when no abandonment had been shown?

5. Did the District Court err in finding that there had been an abandonment of the child by Appellant?

6. Was (a) trying to locate the baby, (b) notice to Attorney Feeney, (c) acknowledgement of paternity, (d) filing of Petition for Writ of Habeas Corpus, (e) Answering and objecting to Petition for Adoption, (f) complying with District Court's order for blood test, and all within 30 days after birth of child, sufficient to establish Appellant's parental rights and negate any possible "abandonment"?

On September 4, 1990, the father petitioned for a writ of habeas corpus, alleging that he was the putative father of a baby boy born on August 18, 1990, that the mother placed the child for adoption with the adoptive parents without his consent, and that he was a fit and proper person to have the care, custody, and control of his child. On September 18, 1990, the adoptive parents filed their petition praying for the adoption of the child, alleging, among other things, that the mother consented to the adoption; that the father failed to support the mother during her pregnancy, refused to be responsible financially for the pending birth of his child, denied paternity, and was unfit to be a parent; and that it was in the best interest of the child for the adoption to be ordered without the father's consent. The court ordered that blood tests of the mother, the father, and the child be made at the father's expense to determine paternity.

On October 30, 1990, the father filed his motion seeking visitation rights with his son. The adoptive parents filed their traverse to this motion, alleging in substance that, although the father had shown an interest in the child, he was not a responsible person and that it would not be in the child's best interest to permit the father to have unsupervised temporary visiting privileges pending the consolidated hearing on the writ and the petition. On January 31, 1991, the father filed a motion for immediate custody of his son on the ground that the blood test conclusively established that he was the biological father. On February 25, 1991, the court filed its order denying the father's motion, finding the best interest of the child would be served by maintaining the status quo until a full hearing had been held.

The consolidated hearing on the writ of habeas corpus and the petition for adoption commenced at nine o'clock in the morning on April 5, 1991, and concluded at noon on April 8, 1991. On May 1, 1991, the court filed a judgment and final decree of adoption, incorporating the findings contained in its decision letter dated April 15, 1991, and ordering that the petition for habeas corpus be denied, that the father's parental rights to BBC be terminated, and that BBC be declared adopted by the adoptive parents. It is from this judgment and decree that this appeal is taken.

The salient facts for the most part are not in dispute. The father and mother started having sexual relations during the summer of 1989, and the mother eventually became pregnant. Upon learning of the pregnancy, the mother advised the father of such and told him that she was consider-

ing having an abortion. They agreed that she should not have an abortion and that she would move to Casper, Wyoming, to be with the father, even though she did not want to marry him. During the time they lived together in Casper, the father gave approximately $200 per week to the mother, which she deposited in a joint checking account from which she paid household bills and some of the doctor bills for prenatal care. The mother also received about $200 per month from her family and Title 19 help. In late May or early June of 1990, the mother became tired of her relationship with the father and returned to Riverton.

Although the mother attempted to avoid having contact with the father after she returned to Riverton, about two weeks before the birth of their child, she and the father met and discussed their child's future. During this conversation, the mother said that she was thinking about putting the child up for adoption. The father objected to this and suggested that they get back together and raise the child. In the alternative, if the mother did not want to get back together again and yet she wanted to keep the baby, the father agreed that he would provide child support. If the mother did not want to do either, the father said he would take the baby.

When the mother went to the hospital to have the baby, the hospital was instructed not to give out any information concerning the mother or the baby. On approximately August 18, 1990, when the father was in the hospital visiting his boss' father, he saw the mother's sister and asked her if the mother was in the hospital having their baby. The mother's sister replied that she was merely in the hospital visiting a friend. The father also called the doctor and had his boss' wife call the hospital, but he was unable to get any information from anyone regarding the hospitalization of the mother or the birth of his child. The father received a letter dated August 20, 1990, from the mother's attorney, advising him that their child had been born on August 18, 1990, and requesting him to relinquish his parental rights so his child could be adopted. The letter also informed the father that he had thirty days from receipt of the letter in which to express an interest in or responsibility for the child.

The mother testified that, during the time she lived in Casper, the father drank too much, verbally abused her, and physically abused a puppy. The adoptive parents' attorney questioned several witnesses, whose combined testimony revealed that the father had sold cocaine, physically abused a former wife and stepchild, was an abuser of alcohol, continuously used profane language, traveled constantly as required by his job, did not maintain a permanent residence, and had no parenting skills.

### Adoption

■ Although not specifically stated as such by the father, the controlling and dispositive issue relating to the validity of the adoption is whether or not the court abused its discretion when it made its factual determinations that the father failed the "interest in and responsibility for" test and that the father's objections to the petition for adoption were not valid. Wyo.Stat. § 1–22–108(c) (1988) provides:

(c) If the putative father files and serves his objections to the petition to adopt as provided in subsection (b) of this section, and appears at the hearing to acknowledge his paternity of the child, the court shall hear the evidence in support of the petition to adopt and in support of the objection to the petition and shall then determine whether:

(i) The putative father's claim to paternity of the child is established;

(ii) The putative father having knowledge of the birth or pending birth of the child has evidenced an interest in and responsibility for the child within thirty (30) days after receiving notice of the pending birth or birth of the child;

(iii) The putative father's objections to the petition to adopt are valid; and

(iv) The best interests and welfare of the child will be served by granting the putative father's claim to paternity or by allowing the petition to adopt.

In *JWR v. RG*, 716 P.2d 984, 988 (Wyo. 1986), this Court stated:

Several principles which we have applied to contested adoptions under § 1–22–110 should apply equally under § 1–22–108. First,

" '[A]doption statutes are strictly construed when the proceeding is against a nonconsenting parent and every reasonable intendment is made in favor of that parent's claims.'

*"Such strict construction is mandated by the fact that parental rights are fundamental rights."* (Citations omitted [and emphasis added].) *Matter of Adoption of CCT,* [Wyo., 640 P.2d 73,] 74–75 [ (1982) ], quoting *Matter of Adoption of Voss,* Wyo., 550 P.2d 481, 485 (1976).

Second, a district court's factual determinations in a contested adoption can be reversed only if the court has abused its discretion.

" 'A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.' " *Matter of Adoption of CCT,* supra, at 76, quoting *Martinez v. State,* Wyo., 611 P.2d 831, 838 (1980).

With these principles in mind, we examine and evaluate the evidence to determine whether the court could reasonably conclude as it did. The court's conclusions are recited in its decision letter, which states in pertinent part:

The above matter having come before the Court for trial, the Court finds that the putative father is the biological father of the child but has shown his lack of concern for the child by failing to establish legal paternity. The putative father, having knowledge of the birth or pending birth of the child, has not evidenced an interest in and responsibility for the child within thirty (30) days after receiving notice of the pending birth or birth of the child. The putative father's

objections to the petition to adopt are not valid. The best interests and welfare of the child will be served by allowing the petition to adopt. The putative father has abused women, alcohol, and his former stepson. He has participated in illegal activities involv[ing] controlled substances. He is not a fit and proper person to have custody of the child. The petitioners are fully qualified to adopt the child.

The record on appeal and the parties' briefs reveal that the parties are uncertain which, if not both, of the thirty-day periods mentioned in the statute applies in this case; i.e., whether the putative father evidenced an interest in and responsibility for his child within thirty days after receiving notice of the child's pending birth or within thirty days after receiving notice of his child's birth.

The adoptive parents contend that the father failed to provide a sufficient amount of money to the mother for her support and prenatal care and thereafter failed to make financial arrangements to pay for the birth of his child. They also contend that, once the father became aware of the pending birth of his child, he should have received counseling for his drinking and abusive behavior. The test is not what the father could have or should have done but is what he did do within thirty days after he received notice of the pending birth or birth of his child. The evidence is uncontradicted that, when the father first learned that the mother was pregnant with his child, he agreed that she should not get an abortion and he provided funds for her support and prenatal care while she lived with him in Casper. The evidence is also uncontradicted that, just prior to the birth of his child, he objected to putting the child up for adoption and told the mother that he would pay for the birth and support of the child. The record indicates that the father did about all he could do to determine when and where his child was to be born but was rebuffed by the mother, the doctor, and the hospital. In addition, within thirty days after the child's birth, the father attempted to locate the whereabouts of his child, petitioned the court for a writ of habeas corpus

to obtain custody of his child, and objected to his child's adoption.

The court's determination that the father showed a lack of concern for his child by failing to establish legal paternity is clearly unfounded. Wyo.Stat. § 1–22–108(d) (1988) (emphasis added) provides:

> (d) The putative father has no right to assert paternity in *adoption,* dependency or termination of parental rights proceedings *unless he is known and identified by the mother ... and unless* prior to the interlocutory hearing of the adoption proceedings, *he has acknowledged the child as his own by affirmatively asserting paternity as provided in W.S. 1–22–108.*

The father attempted to and did establish his paternity in the adoption proceedings. The mother acknowledged that the father was the biological father when she signed her written relinquishment of her child for adoption, the father affirmatively asserted his paternity in his petition for a writ of habeas corpus, and the court acknowledged that the father was the biological father at the commencement of the consolidated hearing.

█ The court's determination that the father's objections to the adoption were not valid is also clearly without foundation. This case was pleaded, tried, argued, appealed, and briefed on the specific issue of whether the father evidenced an interest in and responsibility for his child within the thirty-day period. Unlike in *JWR,* 716 P.2d 984, the adoptive parents in this case did not plead or prove abandonment or any other statutory grounds for a nonconsensual adoption. In *JWR,* this Court said that the abandonment finding was not determinative, but we did not hold that an adoption should be granted even if a putative father's objections to the petition were valid. It makes little sense to grant the adoption even though the evidence is clear that paternity has been established, that the father has passed the "interest in and responsibility for" test, and that his objections to the petition to adopt are valid. Keeping in mind our principles of statutory construction and that only a qualified statutory right exists for the adoption of another's

child, we are unable to conclude that the legislature intended for the putative father to compete with the adoptive parents in a "best interest of the child" contest regardless of what else had been proved or disproved. If this were the intent of the legislature, it could have merely said that a putative father's parental rights would be terminated if prospective adoptive parents were able to show that they could do a better job of raising his child.

The adoptive parents also contend that the right of a nonconsenting putative parent is secondary to the best interest of a child. For this proposition, they cite the cases of *Morris v. Jackson,* 66 Wyo. 369, 212 P.2d 78 (1949), and *MVF v. MF,* 766 P.2d 550 (Wyo.1988). In *Morris,* the biological father petitioned the court for a writ of habeas corpus to obtain custody of his child from the foster parents. This Court, quoting with approval the holding in *Kennison v. Chokie,* 55 Wyo. 421, 425, 100 P.2d 97 (1940), affirmed the lower court's order denying the father's request for custody:

> "[T]he paramount question at all times, when the custody and control of a minor child is in dispute, is the welfare of such child. That has been declared to be the rule by this court a number of times."

*Morris,* 66 Wyo. at 381, 212 P.2d 78. The adoptive parents remind us that in *MVF* we said:

> [W]e note that a fundamental consideration in all adoptions is the best interests and welfare of the affected children. This consideration is found in the statutes, and one can hardly find an adoption case that does not, in some place, use that phraseology.

766 P.2d at 553.

█ We are still guided by these general principles, but they must not be taken out of context. In *Morris,* we emphasized that the best interest of the child is paramount when the custody orders are temporary in nature and subject to modification to meet changing conditions, not when a parent's right to the care, custody, and control of his child has been permanently terminated. In *MVF,* we also stressed that, only after

the requirements of a statute have been met, do the best interest and welfare of a child come into play. In this case, we are unable to consider the best interest and welfare of BBC in the context of affirming the decree of adoption. The adoptive parents failed to meet the statutory requirement of proving by a preponderance of the evidence that the father did not evidence an interest in and responsibility for his child within thirty days after he received notice of the pending birth or birth of his child. The adoptive parents also failed to prove by a preponderance of the evidence that the father's objections to their petition for adoption were not valid. There is simply too much evidence to the contrary. We are compelled to hold that the court abused its discretion by finding otherwise. The court's decree terminating the father's parental rights in BBC and declaring BBC adopted by the adoptive parents is reversed.

### Custody

■ The father is not automatically entitled to have custody of his child just because we have reversed the court's decree of adoption. *Morris,* 66 Wyo. 369, 212 P.2d 78. The court found that the father was not a fit and proper person to have custody of his child. We will not reverse the court's order denying custody to the father on the basis of its finding merely because the father made the bald assertion in his brief that the court erred by doing so. The father failed to support his assertion with any cogent argument or citation of authority whatsoever, and, as a result, we will not consider the alleged error. *State Farm Mutual Automobile Insurance Company v. Wyoming Insurance Department,* 793 P.2d 1008 (Wyo.1990); *Johnston v. Conoco, Inc.,* 758 P.2d 566 (Wyo.1988); W.R.A.P. 5.01(4).

In view of our holdings to reverse the decree of adoption and to affirm the court's order denying the father custody of his child, we remand this matter for a timely hearing before the trial court to determine what is now in the best interest and welfare of BBC pertaining to his temporary care, custody, and control, as well as what

are the father's rights and support obligations in connection therewith.

GOLDEN, Justice, dissenting, with whom CARDINE, J. joins.

I respectfully dissent.

In this case we must review the district court's application of Wyo.Stat. § 1–22–108 (June 1988), as substantive law providing a procedure for contested adoptions. *Matter of Adoption of GSD,* 716 P.2d 984, 987 (Wyo.1986). *GSD* was the first case in which this court reviewed a district court's application of the law in question. This case is now the second.

I agree with the majority's analysis up to a point. I agree that BDR, the biological father who is contesting the adoption, established his claim to paternity. I also agree that the district court erred when it found the evidence insufficient to prove that BDR had evidenced an interest in and responsibility for the child within the requisite thirty-day period. Those factors, paternity and interest/responsibility, however, are but two of the four factors that a court must consider.

I part company with the majority in its analysis, or rather lack of analysis, of the two remaining factors. Those factors are the validity of the contesting biological father's objections to the adoption and the best interests of the child. In *GSD* a unanimous court established the method of review for a case like this. Writing for that court, Justice Cardine made clear that we review the district court's findings as part of the four-part test of Wyo.Stat. § 1–22–108(c)(i)–(iv). *GSD,* 716 P.2d at 987. We can reverse a district court's factual determinations in a contested adoption "only if the court has abused its discretion." *Id.* at 988. Justice Cardine emphasized that the district court bases its decision "on the manner in which the [four] factors balance." *Id.* at 987. Since the district court's decision is the product of a balancing of four factors, obviously none of those factors is talismanic, none is entitled to more weight than any other. In *GSD,* for example, the court found that the al-

leged father had established his paternity claim as the biological father and that he had evidenced an interest in the child within the requisite time period. However, with respect to the two remaining factors, validity of objections and best interests of the child, the court found against the contesting biological father.

Following *GSD*'s method of review with respect to those two remaining factors, I would hold that the district court was correct in finding that BDR's objections to the adoption were invalid and that the adoption was in the best interests of the child. Let us consider these two factors one at a time.

The majority declares that the district court's determination of BDR's objections to the adoption as invalid "is clearly without foundation." Having read BDR's pleading entitled "Objection to Adoption" and BDR's hearing testimony, I must respectfully disagree with the majority's conclusion. In reality, BDR's objections were nonexistent. Like the contesting biological father in *GSD*, BDR's stance, from both a pleading standpoint and evidentiary standpoint, "was essentially defensive because he was trying to prevent the adoption." *GSD*, 716 P.2d at 989. All that his objections amounted to were his feeble protestations, unsupported by evidence, that he was not an alcohol abuser and he was a fit person to have custody of the minor child "until such time as it is demonstrated that his care of the child is in fact detrimental to the physical wellbeing of said child." The district court here found correctly that the biological father, BDR, had not produced any evidence that the quality of the relationship between the child and the adoptive parents was unsatisfactory. This was the court's unanimous holding in *GSD*. In fact, BDR conceded, as he must since the evidence is overwhelming, that the adoptive parents are exemplary human beings and demonstrate without question they would be parents of high quality.

In my judgment, the district court wisely determined from the evidence presented at the hearing that BDR's "objections" to the adoption were invalid. The majority is in error when it states that the adoptive par-ents have the burden of proving that the biological father's objections to the adoption are invalid. Under the statute,

> the court shall hear the evidence in support of the petition to adopt and in support of the objection to the petition and shall then determine whether:
>
> (iii) The putative father's objections to the petition to adopt are valid.

Wyo.Stat. § 1–22–108(c). That language tells me that the contesting biological father must carry the burden of proof as to the validity of his objections. And that same language told the same thing to the unanimous *GSD* court. *GSD*, 716 P.2d at 989.

With respect to the fourth part of the four-part test, the best interests of the child, the majority did not review the district court's finding on this factor due to the majority's erroneous decision that the adoptive parents had failed to prove that BDR's objections were invalid. The adoptive parents presented strong evidence that the adoption was in the best interests of the child. They proved their own outstanding personal characteristics and qualifications as fit and proper parents and also proved BDR's unfitness. As to BDR's unfitness, his actions spoke more eloquently than his words. With his words, BDR weakly protested the allegations that he abused alcohol, women, and children. With hard evidence, the adoptive parents proved clearly and convincingly that he is an abuser of alcohol; has experimented with controlled substances; has participated in illegal controlled substances activity; is the product of a dysfunctional alcoholic family; is a womanizer; is verbally and physically abusive to women and children; and is violent, unpredictable, and unstable in his interpersonal relationships. From this evidence, the district court wisely concluded that the adoption was in the child's best interests.

I am satisfied that the district court carefully balanced the four statutory factors and soundly exercised its discretion as required by the teachings of *GSD*.

Finding that the district court did not abuse its discretion, I would affirm.