In the Matter of BJB, a/k/a BBC, a Minor. (Two Cases).

BDR, Appellant (Respondent),

v.

BEB and PJB, Appellees (Petitioners).

BEB and PJB, Appellants (Petitioners),

v.

BDR, Appellee (Respondent).

Nos. C–94–1, C–94–2.

Supreme Court of Wyoming.

Jan. 11, 1995.

Joe R. Wilmetti, Casper, for BDR.

J. Patrick Hand of Hand & Campbell, P.C., Douglas, and Peter J. Feeney, Casper, for BEB and PJB.

Lawrence E. Middaugh, Casper, Guardian ad Litem.

Before GOLDEN, C.J., and THOMAS, CARDINE,* and MACY, JJ., and McEWAN, D.J., Retired.

THOMAS, Justice.

In these appeals, we are tasked with reiterating, for the trial court and the parties, direction that we already have articulated in connection with the efforts of BEB and PJB (the Bs) to adopt a young child without the consent of BDR, the natural father. The case first came before this court in *Matter of Adoption of BBC,* 831 P.2d 197 (Wyo.1992) (*BBC I*), in which this court reversed an order terminating BDR's parental rights and decreeing adoption in favor of the Bs. We held the Bs had failed to demonstrate BDR had not evidenced an interest in, and responsibility for, the child within thirty days after receiving notice of the pending birth or birth of the child, although the trial court found this ·feature of WYO.STAT. § 1–22–108(c) (1988) had been established. The case was remanded for a timely hearing before the trial court "to determine what is now in the best interest and welfare of BBC pertaining to his temporary care, custody, and control, as well as what are the father's rights and support obligations in connection therewith." About a year later, the case was again before this court in *Matter of Adoption of BBC,* 849 P.2d 769 (Wyo.1993) (*BBC II*), in which this court reversed those parts of the district court's order granting guardianship to the Bs, denying visitation rights to BDR, and removing BDR's support obligations. We held the district court had failed to comply with the court's opinion and mandate in the prior case. We now have before us an appeal from an order which provided the Bs were granted full guardianship of BBC; BDR was denied rights of visitation; BDR was freed from any obligation to furnish

* Retired July 6, 1994.

support; the little boy was to be known by a name selected by the Bs; and a letter of guardianship was to issue. Because of the delay in resolution, we regret we must, again, reverse and remand with specific direction to the district court.

In the appeal of BDR, he articulates these issues in his Brief of Appellant BDR:

1. Did the Trial Court err in denying Appellant's challenge for cause?

2. Did the Trial Court err in denying Appellant's peremptory challenge?

3. Does the jurisdiction of a District Judge who has been assigned to preside on a matter in a judicial district other than the one to which he is appointed by reason of the recusal of the Judge of that district, cease upon completion of that particular matter or does it carry over after appeal and reversal?

4. Did the District Court substantially comply with the previous mandate of the Supreme Court?

5. Was there any substantial evidence to support the ruling of the District Court?

6. Did the District Court err in ordering a change of name for BBC?

7. Did the Appellant receive a fair and impartial trial?

In the Brief of Appellees (Petitioners) BEB and PJB, the issues are stated in this way:

1. Whether or not the hearing held by the District Court substantially complies with the previous mandates of the Wyoming Supreme Court, and is supported by substantial evidence, and allowed Appellant a fair and impartial hearing?

2. Whether or not the District Court Order constitutes a name change for "Baby Boy Clark", or simply provided for a designation for him to be known as or referred to as "Braden Jess Boner", rather than "Baby Boy Clark"?

3. Whether or not Appellant had a right to a jury trial in the issues of this matter, and even if so, if that issue has been waived or abandoned by Appellant on appeal?

4. Whether or not the Trial Court acted properly and within its authority and jurisdiction in denying Appellants chal-

lenge for cause, peremptory challenge, and in continuing to preside over this matter?

In the Brief of Appellants (Petitioners) BEB and PJB, the following issues are asserted:

1. Did the Trial Court err in ruling that the Wyoming Supreme Court has foreclosed the issue of adoption in this case?

2. Is the evidence contained in the records sufficient to have allowed Petitioners' motion to amend the pleadings to conform to the evidence, and grant adoption in this case?

In the Brief of Appellee BDR, no separate statement of the issues is set forth.

The underlying facts are articulated adequately in the prior opinions of this court. For the reader to whom the case may be novel, it suffices to state the Bs, acting upon the consent of the mother of the baby boy, sought his adoption. BDR, the father, appeared and objected to the petition for the adoption. The parties did not dispute BDR's paternity and, in the first hearing, the district court terminated BDR's parental rights and ordered adoption based upon a finding under WYO.STAT. § 1–22–108(c) that BDR had not evidenced an interest in, and a responsibility for, the child within thirty days after receiving notice of the birth or pending birth of the child. As previously indicated, this court ruled the record did not support that determination, and the case was remanded for further proceedings to address the best interest and welfare of BBC, with respect to his temporary care, custody, and control and the father's rights and support obligations. The thrust of that first decision was to refer the parties to WYO.STAT. § 1–22–110 (1988).

The district court tried again and, in the second appeal, we were constrained to conclude it had not accommodated to the mandate in the prior case. We reversed an order granting guardianship to the Bs, denying visitation rights to BDR, and removing any support obligations from BDR. We there said:

We remand to the district court and order the district court to: (1) maintain the

status quo, concerning BBC's temporary care[,] custody and control, as it existed before the district court's June 29, 1992 order; (2) grant all parties leave to amend the pleadings and proper amount of time to answer opposing pleadings; and (3) after all the pleadings are filed, **hold an evidentiary hearing to determine, based on the circumstances as they exist today, the best interest of BBC and BDR's rights and duties.**

*BBC II*, 849 P.2d at 774 (emphasis added).

We now are confronted with an appeal from an order by the district court which was substantially similar to the prior order and essentially added only the provision BBC would now be known by a name bestowed upon him by the Bs. It is clear this order was entered after a truncated hearing held by the district court in which a local rule in vogue in the Seventh Judicial District was invoked in the Eighth Judicial District. Testimony by witnesses was limited to the testimony of the parties and one expert on each side. Apparently, for purposes of applying the rule, the mother of BBC was treated as a party. In the course of dialogue between the court and the parties, the trial court expressed the opinion that the Supreme Court had ruled an adoption could not be achieved in this case.

In *BBC I*, this court ruled the adoption could not be granted pursuant to the provisions of Wyo.Stat. § 1–22–108 because the requisite finding upon which the court relied was not supported in the record. This court did not foreclose proceedings conducted in light of Wyo.Stat. § 1–22–108, but the manner in which this ruling was addressed by the parties and the trial court demonstrates an abandonment of any effort to proceed under that provision in the statutes, and we conclude the law of this case now is that an adoption cannot be ordered relying only upon the provisions of Wyo.Stat. § 1–22–108. *See Matter of Adoption of GSD*, 716 P.2d 984 (Wyo.1986).

We are puzzled, however, by the conclusion that this court has foreclosed the adoption of BBC. While the parties and the trial court apparently have taken cognizance of Wyo.Stat. § 1–22–110, the truncated hearing held by the district court was completely inadequate to permit the parties to debate the issue of whether adoption could be ordered under that statute. The Bs did not bring any current evidence addressing any of the grounds justifying adoption without consent under that statute, but relied upon the prior record. BDR was not allowed to present evidence that would be relevant to any of those issues.

■ We acknowledge resolution of an adoption under Wyo.Stat. § 1–22–110 is difficult in light of the proceedings in this case. *In re Adoption of Female Child X*, 537 P.2d 719 (Wyo.1975). BDR initially was not advised of the birth of the child and had difficulty finding out what had become of the child. Subsequently, he was foreclosed from contact with the child and, by judicial fiat, was excused from support. Nevertheless, the adoption code of the State of Wyoming is found in Wyo.Stat. §§ 1–22–101 to –116 (1988) and, as we stated clearly and forcefully in *BBC I*, 831 P.2d at 200, quoting from prior Wyoming cases:

> [A]doption statutes are strictly construed when the proceeding is against a non-consenting parent and every reasonable intendment is made in favor of that parent's claims.

*Matter of Adoption of Voss*, 550 P.2d 481, 485 (Wyo.1976) (citations omitted).

> **Such strict construction is mandated by the fact that parental rights are fundamental rights.**

*Matter of Adoption of CCT*, 640 P.2d 73, 75 (Wyo.1982) (emphasis added).

■ This court, as indicated, has concluded not only that parental rights are fundamental rights, but they are of constitutional magnitude. *Matter of GP*, 679 P.2d 976 (Wyo.1984); *DS v. Dept. of Pub. Assistance & Social Services*, 607 P.2d 911 (Wyo.1980). *See Nulle v. Gillette–Campbell County Joint Powers Fire Bd.*, 797 P.2d 1171 (Wyo.1990), and the cases cited therein. When addressing fundamental rights of constitutional magnitude, the court must accommodate to the keenest spirit of procedural due process. That is the suggestion this court endeavored

to communicate in *BBC I* and *BBC II* but, apparently, the message was not received.

■ We have not dealt at length with each issue articulated by the parties, but those issues have been substantially resolved or will be resolved by the district court in connection with the remand and new hearing. In some instances, the resolution is obvious. We reverse the order entered in this case on November 5, 1993, and we remand it to the district court of the Eighth Judicial District. We are committed to the earliest possible resolution of this case; neither the parties nor the child should be suspended in the judicial equivalent of outer space any longer.

The court is instructed that one of the judges of the Eighth Judicial District, both of whom have assumed the bench subsequent to the initiation of these proceedings, should now handle this case unless recused or appropriately challenged. Under no circumstances should it be reassigned to the judge who has heretofore handled the matter. We reiterate the suggestion in *BBC II* that the parties should be afforded an opportunity to expand in any appropriate way they choose upon the pleadings they have presented to formulate the issues in this case, although this court's impression is that those issues are relatively clearly defined. A full and complete hearing shall be held by the court in which the parties should have the broadest possible opportunity to offer relevant evidence addressing the issues which the court must necessarily determine in an adoption proceeding. Because the appropriate hearing must be held at this time, instead of when it should have been held, the court needs to satisfy itself with respect to the current, as well as the historical, relevant facts.

■ We acknowledge we have remanded to the district court a case that well could tax the wisdom of Solomon. Nevertheless, BBC, the Bs, and BDR all are entitled to some definitive resolution of this case. It is legally and morally inappropriate to leave it simply in the status of a guardianship that attempts to imitate an adoption, but affords to none of those involved the certainty of the rights that attach or are lost pursuant to a legal adoption.

CARDINE, J., Retired, filed a dissenting opinion.

CARDINE, Justice, Retired, dissenting.

This case is a sad illustration of much of what is wrong with today's justice delivery system. Justice delayed is justice denied—slow justice is no justice. If nothing else is learned from this case, we at least ought to recognize the need to assign these type cases to a fast track disposition and so provide by court rule if necessary.

Baby Boy BBC was born August 18, 1990, and delivered by the unwed natural mother to the custody of BEB and PJB (hereinafter the Bs) with her consent to adoption of BBC. BDR, the natural father living apart from the mother, learned of the birth of BBC, refused his consent to adoption, appeared at a hearing, resisted the Bs efforts to adopt, and continues that resistance now through a third district court hearing and a third appeal to the Wyoming Supreme Court. What should be done?

I would hold that the Bs proceeded in good faith. They wanted to adopt. There was an unwed mother who offered her baby with consent to adopt. BDR, the father, refused to consent. The Bs assessed their prospects for adoption as they existed at that time: that is, what were the prospects for adopting with a consenting mother, a single man claimed to be the natural father who was said to be an oil field hand, alleged unstable, drinking, apparently angry at mother (girlfriend) who had terminated their relationship. The Bs proceeded with the adoption hearing on these facts, prepared then to accept a win-or-lose decision. If the case had then been finally disposed of with victory to either party, the result, while unhappy for the loser, would have been acceptable to society.

But here we are with a little boy who is in his fourth year of life with the Bs, the only parents he has ever known. Surely it is not in his best interests that he be torn from these people and placed forever with those who are now strangers. What devastation,

what trauma, for a four year old. If all that is left for determination is the best interests of the child, the Bs must prevail.

Finally, the problem I have with this case is that every time we see it (now for a third time) it is a different case. There are more motions, amended pleadings, new issues, new evidence, new testimony, hearings, briefs and arguments. BDR is now married, maintains a home with his wife and children, alleges employment and stability. A party should not gain advantage, or be put at a disadvantage, by delay and passage of time. I would hold that the facts as they existed at the time of the first hearing are the determinative facts. Thus, the Bs should not benefit because Baby Boy BBC has been in their custody for four plus years, and BDR should not benefit because of his claimed change in life style and bettered situation. If additional evidence is taken, it should be confined to those facts and the time frame before the first hearing, not to what has occurred since that time. Accordingly,

I dissent.