2002 WY 25

In the Matter of the Adoption of That Certain Infant Boy Born February 16, 1993 at the Johnson County Memorial Hospital, Buffalo, Johnson County, Wyoming.

VJL, Appellant (Petitioner),

v.

RED and DDD, Appellees (Respondents).

No. C–00–11.

Supreme Court of Wyoming.

Feb. 13, 2002.

Representing Appellant:  James P. Castberg, Sheridan, WY.

Representing Appellee DDD:  Robert W. Brown of Lonabaugh and Riggs, Sheridan, WY.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

LEHMAN, Chief Justice.

[¶ 1]  VJL appeals from a district court order denying her challenge to adoption proceedings which began nearly nine years ago when she signed a relinquishment and consent to adoption of her infant son following

his birth in February of 1993. Because we are cited to no authority supporting the specific claims made by VJL on appeal and because the interests of the child seem best served by maintenance of the status quo and finalizing this litigation, we affirm.

## ISSUES

[¶ 2] VJL, the biological mother, states the issues as follows:

### Issue I

Did the district court commit error in entering its final order denying all claims on August 22, 2000,

(a) Denying the appellant's motion for relief from judgment or order modifying visitation of minor child entered July 11, 2000?

(b) Denying the appellant's motion for new trial, amendment of the judgment and order to modify order of visitation entered July 11, 2000?

### Issue II

Did the district court commit error in denying the appellant's motion to reject the report filed by the mediator by entry of the court's final order denying all claims on August 22, 2000?

### Issue III

Did the district court commit error in failing to rule on the appellant's motion to reconsider filed September 7, 2000?

Appellee DDD, the adoptive mother, presents the following arguments:

I. Appellant's brief presents no cogent authority for its Issues I and III.

II. The trial court properly denied appellant's petitions and motion filed on July 21, 2000.

III. The factual issues alleged in appellant's March 17, 2000 Petition for Modification of Order Dismissing Petition to Vacate or Annul Adoption did not entitle appellant to a hearing following mediation.

IV. The Stipulation of June 15, 2000, was conducted in accordance with recognized standards and rules and should not be overturned.

V. The Stipulated Settlement signed by the parties at the end of the mediation session is a binding contract and must be enforced.

VI. The district court did not commit error in failing to rule on appellant's Motion to Reconsider filed on September 7, 2000.

## FACTS

[¶ 3] The events giving rise to this case began in late 1992 or early 1993 when VJL was expecting the birth of a child. At the time, VJL's supervisor at work was DDD. They apparently discussed the impending birth and agreed that when the child was born DDD and her husband, RED, would adopt him.[1]

[¶ 4] On February 16, 1993, VJL gave birth to a baby boy. Physical custody of the child was immediately relinquished to DDD and RED. The same day, within hours of the child's birth, a relinquishment of custody and consent to adoption was presented to VJL in the hospital by a lawyer representing DDD and RED. VJL signed the form, agreeing to the adoption of her son by DDD and RED. On February 19, 1993, DDD and RED filed a petition for adoption in district court, asking the court to enter an interlocutory decree pursuant to Wyo. Stat. Ann. § 1–22–111(a) (LexisNexis 2001) awarding them care and custody of the child and allowing them to exercise all rights of natural parents. The court entered an interlocutory decree on April 13, 1993. Although no hearing transcript is contained in the record, it appears that a hearing was held prior to entry of the interlocutory decree as required by Wyo. Stat. Ann. § 1–22–106 (LexisNexis 2001). Six months later, on August 26, 1993, DDD and RED filed an application for final decree of adoption in accordance with Wyo. Stat. Ann. § 1–22–112 (LexisNexis 2001). A decree of adoption was entered August 31, 1993, giving DDD and RED full custody and

---

1. There are no transcripts of hearings or other evidentiary materials contained in the record in this case. For the court to reconstruct the facts, therefore, we look to the admissions of the parties contained in the pleadings and other documents in the record.

control of DRD along with all rights and obligations of natural parents with respect to him.

[¶ 5] Seven months later, on April 4, 1994, VJL filed a petition to vacate or annul the adoption. In Count I of her petition, under the caption "Fraud," VJL claimed that in return for her consent to the adoption, DDD and RED orally agreed to an "open" adoption allowing for visitation, telephone calls, and other contact between VJL and the child. VJL claimed that DDD and RED violated this part of the agreement. In Count II, VJL claimed that she agreed to the adoption under duress in that DDD's position of authority over her at work made it impossible for her to retract her consent to the proposed adoption. Count III claimed that the consent signed by VJL on February 16, 1993, was invalid because she was suffering from the effects of prolonged labor, sleep deprivation and narcotics given to her during labor. Count IV alleged that VJL and the child are American Indians, that the adoption, therefore, fell under the Indian Child Welfare Act of 1978, (ICWA) 25 U.S.C. § 1913, and that the proceedings failed to comply with the provisions of that Act.

[¶ 6] DDD and RED timely answered, denying all claims of fraud, duress, invalid consent and applicability of the ICWA. VJL thereafter filed a motion for temporary visitation which DDD and RED opposed and the court denied by order dated September 27, 1994.

[¶ 7] Apparently, nothing further happened with respect to VJL's petition until more than six months later when she filed a brief in support of her claim that the ICWA applied to the adoption proceedings. VJL's brief was followed rapidly by the filing of a motion for partial summary judgment and supporting memorandum by DDD and RED in which they argued that summary judgment in their favor was appropriate on the issue of the ICWA. On April 25, the court entered an order allowing the Northern Arapaho Tribe to intervene in the proceedings pursuant to the ICWA.

[¶ 8] On June 5, 1995, the tribe filed a notice of intervention, a verification of status notifying the court that the Tribe considered VJL and her child to be Northern Arapaho Indians and a petition to invalidate the decree of adoption as violative of the ICWA. DDD and RED responded on September 26, 1995, with a second motion for partial summary judgment and supporting memorandum, again arguing that the ICWA did not apply because the child is not an Indian. The Tribe and VJL simultaneously filed separate motions for summary judgment and supporting memoranda in which they claimed the child is an Indian and the ICWA applies.

[¶ 9] After a hearing on October 24, 1995, the court entered an order on January 2, 1996, granting partial summary judgment in favor of DDD and RED and against the Tribe and VJL, finding that the child is not an "Indian child" for purposes of the ICWA and the Act does not apply. The Tribe filed a motion for reconsideration; but, before any action was taken on the motion, the Tribe and the adoptive parents reached a settlement agreement which the court approved by order dated January 23, 1996. The agreement provided that the Tribe would withdraw its motion for reconsideration in exchange for the agreement of DDD and RED to inform the child of his Indian heritage and take him to tribal cultural events annually. VJL was not a party to the agreement.

[¶ 10] On February 6, 1996, VJL filed a motion asking the court to reconsider its ruling on summary judgment and its order approving the settlement agreement. No further action was taken in the case until nearly six months later when, on July 30, 1996, the court summarily denied VJL's motion without any explanation.

[¶ 11] Two and a half months later, on October 16, 1996, VJL asked the court to set the remaining issues for trial. The court issued an order for a scheduling conference to be held January 14, 1997, a year after the court's summary judgment order and three years after VJL filed her petition to vacate the adoption. At the scheduling conference, the matter was set for trial on April 29, 1997. The trial did not take place as scheduled because the parties reached a settlement agreement.

[¶ 12]   Under the terms of the settlement, VJL agreed to drop her legal challenge to the adoption in exchange for the agreement of DDD and RED to allow her to have visitation with the child for two hours at least two times per month until the child reached the age of six years.   At that time, the agreement provided, visitation could be increased if the child desired.   The agreement also provided that VJL would not reveal to the child that she was his biological mother and that DDD and RED retained the right to decide whether and when to tell him.   Pursuant to the parties' agreement, the court entered an order dismissing the petition to vacate the adoption on June 9, 1997.

[¶ 13]   Nearly three years later, on March 17, 2000, VJL filed a petition for modification of the court's June 9, 1997 order.   Alleging that the child had requested more time with her and her other children, VJL sought increased visitation.   VJL simultaneously filed a motion for alternative dispute resolution.   On April 18, 2000, DDD [2] filed an opposition to the petition for modification.   Thereafter, on May 9, 2000, the parties filed joint motions for mediation and for appointment of a guardian ad litem.   Pursuant to the parties' request, the court entered an order on May 10, 2000, setting the matter for mediation and appointing a mediator.

[¶ 14]   A mediation was held on June 15, 2000, culminating in another settlement agreement in which the parties agreed that VJL would continue to have visitation with the child two times per month for two hours and that, beginning at age ten, the child would be interviewed every six months by an independent third party to determine his wishes with respect to visitation with VJL. VJL and DDD agreed to abide by his wishes. In accordance with that agreement, the court entered an order modifying visitation on July 11, 2000.

[¶ 15]   On July 21, 2000, VJL, appearing pro se for the first time in the proceedings,

filed motions asking the court for relief from the July 11 order.   VJL alleged various irregularities in the mediation process, including bias and prejudice by the mediator, violations of due process and inadequate legal representation.

[¶ 16]   On August 3, 2000, the mediator, apparently on his own initiative, filed a report in response to VJL's motions in which he set forth his view of what occurred during the mediation and his "observations" of VJL's behavior.[3]   DDD also filed a response and, simultaneously, a petition to terminate visitation.   On August 22, 2000, the court entered a final order denying all pending claims. VJL, again represented by counsel, timely appealed the court's order.

### STANDARD OF REVIEW

[¶ 17]   Adoption was not known at common law and is a creature of statute to be strictly construed.   *JK v. MK*, 5 P.3d 782, 787 (Wyo.2000) (citing *Adoption of MM*, 652 P.2d 974, 979 (Wyo.1982)).   Since adoption is entirely statutory, the proceedings must be conducted in substantial conformity with the statutory provisions.   *Matter of TR*, 777 P.2d 1106, 1110 (Wyo.1989) (citing *MVF v. MF*, 766 P.2d 550, 552 (Wyo.1988)).

[¶ 18]   One of the most basic principles we seek to promote in adoption cases is the best interests of the child.   *JK*, at 788 (citing *Matter of TR*, at 1118).   Finality of decision and bringing an end to litigation are almost invariably in the best interests of the child. *Matter of TR*, at 1115 (Urbigkit, J., concurring) (citing *In Interest of JL*, 761 P.2d 985 (Wyo.1998)).

### DISCUSSION

*1.   Alleged error in denying VJL's motions of March 17 and July 21, 2000*

[¶ 19]   VJL claims that the district court erred in denying without a hearing her March 17, 2000 petition for modification of

---

2.   RED apparently committed suicide in June of 1997.

3.   We make no ruling as to the propriety of the mediator's report.   We note only that the function of a mediator is to be a conciliator, to bring parties together in an effort to reconcile their

differences.   Interjecting oneself into court proceedings after the fact of the mediation as basically a witness to discredit the truthfulness and character of a party to the mediation would not seem to comport with the functions of a mediator.

the June 9, 1997 order dismissing the case. She asserts that sufficient changes in circumstances had occurred to raise significant factual questions requiring a hearing on the issue whether visitation should be modified. VJL further asserts that the district court compounded the error already committed when it then proceeded to decide without a hearing her motions of July 21, 2000, seeking relief from the final order in this case.

[¶ 20]   VJL makes no cogent argument and cites no authority at all for her claim that she was entitled to a hearing on either the March 17 or July 21 motions, and we summarily affirm. *Stone v. Stone,* 7 P.3d 887, 891 (Wyo.2000); *May v. May,* 945 P.2d 1189, 1191 (Wyo.1997).

### 2.   Alleged error in denying VJL's motion to reject the mediator report

[¶ 21]   VJL next claims that the district court erred in denying her motion to reject the report filed by the mediator on August 3, 2000.   Again, VJL cites no authority for her contention that the mediator's report was improper or should not have been considered, nor does she present cogent argument, and we affirm as to this issue. *Stone,* at 891; *May,* at 1191.

### 3.   Alleged error in failing to hear or rule on VJL's September 7, 2000 motion to reconsider

[¶ 22]   The last issue raised by VJL is that the district court erred, first, in failing to hold a hearing on her motion to reconsider and, then, in failing to rule on the motion. As with her other issues, VJL cites no authority for her contention and presents no argument beyond the bare assertion that the district court erred.   Absent cogent argument and pertinent authority, we decline to address it.   *Stone,* at 891; *May,* at 1191.

## CONCLUSION

[¶ 23]   This is yet another sad case illustrating the difficulties inherent in the efforts of our justice system to deal fairly but quickly with adoption cases so as to bring about finality. The baby boy in this case was born February 16, 1993, and delivered only hours later by the biological mother into the custody of DDD and RED with her consent to adoption.   Just over a year later, with time to reconsider, second guess, and feel badly about her decision, VJL sought relief in the courts from what may have been a decision made in haste without sufficient information concerning the ramifications of her decision. For reasons which do not appear in the record, DDD and RED agreed when the boy was four years old to allow regular visits between the boy and his biological mother, visits which, it appears from the record, have been regular and continuous since 1997.

[¶ 24]   Now, due to a confluence of forces, we are asked to decide whether the circumstances of a young boy in almost his ninth year of life who has been raised continuously from birth by DDD but who also knows and has regularly visited his biological mother since he was four should suddenly change. However, VJL has given us no authority, no cogent argument, no basis for reversing the final order in this case.   Absent such a basis, we look to the best interests of the child which seem best served by maintaining the status quo and by ending this litigation once and for all.

[¶ 25]   For these reasons, we affirm.